

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

ENTERED
07/27/2016

| | | |
|---|---|---|
| **IN RE:** | § | |
| **OGA CHARTERS, LLC** | § | **CASE NO: 16-70297** |
|   **Putative Debtor** | § | |
| | § | **CHAPTER  7** |
| | § | |
| **MARTA  VILLARREAL,** *et al* | § | |
|     **Plaintiffs** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 16-7016** |
| | § | |
| **NEW YORK MARINE AND GENERAL** | § | |
| **INSURANCE COMPANY,** *et al* | § | |
|     **Defendants** | § | |

### MEMORANDUM OPINION
### GRANTING PETITIONING CREDITOR'S VERIFIED EMERGENCY MOTION TO ENJOIN, PURSUANT TO 11 U.S.C. § 105, AND RULE 7065, BRP, THE DISSIPATION OF ASSETS BY THE DEBTOR AND ITS INSURERS MADE OUTSIDE THE ORDINARY COURSE OF ITS OPERATIONS

### AND

### GRANTING IN PART, DENYING IN PART PETITIONING CREDITORS' MOTION FOR TEMPORARY RESTRAINING ORDER
### AND FOR PRELIMINARY DECLARACTORY AND/OR INJUNCTIVE RELIEF
### <u>AND MEMORANDUM OF LAW IN SUPPORT</u>

[*Resolving Case No. 16-70297, ECF No. 3* and *Case No. 16-7016, ECF No. 2*]


### I.     INTRODUCTION

Pending before the Court are two matters, the first is Petitioning Creditors[1] self-styled

---

[1] Marta Villarreal; Idolina Rivera; Mario Alberto Zuniga; Lizbeth Nicole Rangel; Thelma Hernandez; Manuel Salinas; Carlota Salinas; Guadalupe Carrillo, Jr.; Elizabeth Cristina Carrillo; Jose Cardenas; Irma Cardenas; Dora Pena; Imelda Guerrero Ochoa, as Rep. of the Estate of Francisca Guerrero; Hortencia Robles; Natalie Alaniz; Jaime Garza, on behalf of the Estate of Adelfa Garza; Jomara Weatherby, on behalf of the Estate of Maria de Jesus Musquiz; Daniel Zuniga, and Rosemary Bernal (collectively, the "***Petitioning Creditors***").  [ECF No. 13 at 2]; [ECF No. 23 at 1 n.1].

"Verified Emergency Motion to Enjoin, Pursuant to 11 U.S.C. § 105, and Rule 7065, BRP, the Dissipation of Assets by the Debtor and its Insurers Made Outside the Ordinary Course of its Operations." [ECF No. 3] (the "***Motion***").  The second is Petitioning Creditors', as plaintiffs in the associated adversary proceeding, self-styled "Motion for Temporary Restraining Order and for Preliminary Declaratory and/or Injunctive Relief and Memorandum of Law in Support." [Case No. 16-7016, ECF No. 2] (the "***Adversary Motion***").  The Motion seeks to enjoin OGA Charters, LLC's ("***OGA***" or "***Putative Debtor***") liability insurance carrier, New York Marine and General Insurance Company (the "***Insurance Company***"), from finalizing any settlements on OGA's liability stemming from an accident that occurred on May 14, 2016.  [Case No. 16-70297, ECF No. 3 at ¶¶ 9, 13, 31-33].  The relief sought is temporary until this Court can determine whether the Petitioning Creditors[2] satisfy the requirements of 11 U.S.C. § 303.[3]  The Petitioning Creditors are opposed by other similarly situated creditors,[4] who for various reasons, primarily that they have entered into settlements with the Insurance Company, seek to prevent Petitioning Creditors from having this Court grant relief by enjoining their settlements or by finding that Petitioning Creditors satisfy § 303's requirements.  This Court considers the pleadings and briefs filed by the parties; the arguments presented at the hearing held July 26,

---

[2] The Petitioning Creditors are:  "Marta Villarreal; Idolina Rivera; Mario Alberto Zuniga; Lizbeth Nicole Rangel; Thelma Hernandez; Manuel Salinas; Carlota Salinas; Guadalupe Carrillo, Jr.; Elizabeth Cristina Carrillo; Jose Cardenas; Irma Cardenas; Dora Pena; Imelda Guerrero Ochoa, as Rep. of the Estate of Francisca Guerrero, Deceased; Hortencia Robles; Natalie Alaniz; Jaime Garza, on behalf of the Estate of Adelfa Garza, Jomara Weatherby, on behalf of the Estate of Maria de Jesus Musquiz, Deceased, Daniel Zuniga and Rosemary Bernal." [ECF No. 23 at 1 n.1].

[3] Any reference to "***Code***" or "***Bankruptcy Code***" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.

[4] The similarly situated creditors are:  Beatrice Garcia ("***Garcia***"), [ECF Nos. 22 and 25], who is also an intervenor, [Case No. 16-7016, ECF No. 28]; and Myra L. Martinez and Jorge Lopez, as Reps. of the Estate of Maricela Lopez; Yvette Aguilar, as Rep. of the Estate of Altagracia Torres; Maria Navarro, as Rep. of the Estate of Jaime Navarro, Sr.; Jesus Navarro, Jaime Javarro, Jr. and Elizabeth Navarro, as surviving children of Jaime Navarro; Maribel Campa, as Rep. of the Estate of Dora Gonzalez; Maria Pineda, as surviving child of Dora Gonzalez; and Maria Cantu; Odella Rickard, as Rep. of the Estate of Emma Samudio; George Garza, Suzanne Hughes, and Olga Garza (collectively, the "***Intervenors***").  [Case No. 16-70297, ECF No. 27].

2016; all other evidence in the record; and relevant case law.  This Court finds that the outcome of the looming § 303 hearing will be determinative of whether § 362 will stay any settlements with the Insurance Company and, as such, the relief sought by Petitioning Creditors merely seeks to maintain status quo until the most important issue in this matter is resolved, whether an order for relief in the involuntary bankruptcy of OGA can and will be issued by this Court.

## II.    FINDINGS OF FACT

This Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rules of Bankruptcy Procedure 7052, which incorporates Fed. R. Civ. P. 52, and 9014. To the extent that any Finding of Fact constitutes a Conclusion of Law, it is adopted as such.  To the extent that any Conclusion of Law constitutes a Finding of Fact, it is adopted as such.  This Court made certain oral findings and conclusions on the record. This Memorandum Opinion supplements those findings and conclusions. If there is an inconsistency, this Memorandum Opinion controls.

On May 14, 2016, a bus carrying passengers, many of which are before this Court, was involved in an accident during an excursion to the Kikapoo Lucky Eagle Casino (the "*Accident*").  [ECF No. 3 at ¶ 9]; [ECF No. 22 at ¶ 1]; [ECF No. 23 at ¶ 2]; [ECF No. 27 at ¶ 2]. This is undisputed by the parties.[5]  Also undisputed is as a result of the accident, the passengers, including the subsequent representative for their estates or children, respectively, before this Court became creditors of OGA.  Further undisputed is that OGA maintained a liability policy with the Insurance Company that would cover a maximum of $5,000,000 in liability.  [ECF No. 3-4 at 1].

On July 8, 2016, the Petitioning Creditors filed their Involuntary Petition Against a Non-

---

[5] Even if this were disputed, the accident is a matter that could be judicially noticed, pursuant to Fed. R. Evid. 201.

Individual. [ECF No. 1]. Two days later on July 10, 2016, Petitioning Creditors filed the Motion. [ECF No. 3]. The Motion alleges that the Insurance Company had reached settlements, including having written agreements, pursuant to Tex. R. Civ. P. 11, between certain parties and the Insurance Company, and that having executed those written agreements the entirety of OGA's liability insurance coverage had been exhausted. *Id.* at ¶ 13-15; [ECF Nos. 3-2, 3-3, and 3-4]. On July 11, 2016, Petitioning Creditors also filed an adversary proceeding against OGA. [Case No. 16-7016, ECF No. 1]. In the adversary, Petitioning Creditors filed a motion that is substantially similar to the instant Motion, but also requests declaratory relief. [ECF No. 2].

On July 12, 2016, this Court held a preliminary hearing on the Petitioning Creditor's Motion. At that hearing, the Petitioning Creditors presented their arguments for why a temporary restraining order, restraining the Insurance Company from finalizing any settlements, should be entered until the final hearing on the Motion. In addition, Intervenors' Counsel argued why a temporary restraining order should not be entered.

As a result of the July 12, 2016 hearing, this Court entered a temporary restraining order that enjoined certain parties from undertaking certain actions related to the Accident and the insurance policy and set a hearing for July 26, 2016. *See generally* [ECF No. 13] (the "***TRO***"). The Court also ordered the parties to file briefing on the issue of whether the proceeds of Insurance Company's policy would be property of the Putative Debtor's estate. [ECF No. 11]. On July 21, 2016, the parties filed their respective briefs. [ECF Nos. 22–23, 25, and 27].

At the July 26, 2016 hearing (the "***Hearing***"), Counsel for the Petitioning Creditors, Counsel for the Intervenors, Counsel for Garcia, and Counsel for OGA appeared before this Court. Steven Shurn, Counsel for OGA, had been recently retained and announced on the record and via stipulation submitted to the Court that service of process of the OGA could be

effectuated through him.  Counsel for each of the above referenced parties presented argument to

this Court on the Motion and the Adversary Motion.  In addition:

1.  Evidence Admitted by Petitioning Creditors

   a.  Exhibit No. 6:   New York Marine and General Insurance Company
       Executed Summons in Adversary 16-07016.  [Case No. 16-7016, ECF No.
       12].
   b.  Exhibit No. 7:  USPS Tracker for New York Marine and General
       Insurance Company Adversary Summons sent by CMRR #
       9414726699042959675983.
   c.  Exhibit No. 8:  Affidavit of John David Franz dated July 11, 2016, except
       for ¶ E, K, and L.
   d.  Exhibit No. 9:  Newspaper Article
   e.  Exhibit No. 10:  Email String, but only as to evidence of the exhaustion of
       liability coverage.
   f.  Exhibit No. 11:  June 21, 2016 Settlement letter to Marta Villarreal from
       Prosight, but only as to evidence of the exhaustion of liability coverage.
   g.  Exhibit No. 12:  William R. Moye June 23, 2016 Rule 11 Agreement:
       Group Mediation and Extension of Deadlines on Settlement Demands
       signed by John David Franz, except as to admission(s) of liability.
   h.  Exhibit No. 13:  William R. Moye June 23, 2016 Rule 11 Agreement:
       Group Mediation and Extension of Deadlines on Settlement Demands
       signed by Juan Ramon Alvarez, except as to admission of liability.
   i.  Exhibit No. 14:  Affidavit of John David Franz dated July 21, 2016
   j.  Exhibit No. 15:  Affidavit of Kraig L. Rushing dated July 21, 2016
   k.  Exhibit No. 16:  Affidavit of Jeffrey Mark Stern dated July 21, 2016
   l.  Exhibit No. 17:  Affidavit of Ricardo Garcia dated July 21, 2016

2.  Testimony by John David Franz

   a.  Affirmed the nature of the claims and that amount of the claims, in excess
       of $15,775.00, held by five clients that he represents and that he had in his
       possession documents confirming the value of the claims for examination.
   b.  Affirmed that the signature was authentic and that he had signed the
       affidavit in the presence of the notary.
   c.  Testified as to the nature of the Rule 11 Settlement sent by Mr. William
       Moye, as representative of the Putative Debtor, and the fact surrounding
       receipt, execution, and return of said settlement.  *See also* Exh. 12.

3.  Stipulations:

   a.  Petitioning Creditor's Counsel presented a Stipulation entered into
       between Petitioning Creditors and OGA.  Mr. Shurn confirmed the
       validity of the Stipulation, which provided certain deadlines for
       responding to the Involuntary Proceeding and Adversary Proceeding.

4.  Mr. Shurn, OGA's Counsel, made the following statements on the record

    a.  He was in contact with OGA's principal who has come to a point of understanding on the Accident, the Involuntary Proceeding, and the Adversary Proceeding.

    b.  OGA's principal made an informed business decision in agreeing to the stipulation with Petitioning Creditors to not oppose the temporary injunction in an attempt to determine the course of OGA in this involuntary bankruptcy.

    c.  OGA's principal was not seeking to evade this Court's jurisdiction in any way and, as such, all service of process could be effectuated through Mr. Shurn.

    d.  Mr. Shurn had begun to gather information about OGA, its assets and liabilities, in order to begin creating schedules.  To wit:

        i.  Property insurance payment of $20,000 for the damage to the bus involved in the Accident.

        ii.  OGA's second bus had an existing lien on it and there may be some minor equity.

    e.  Mr. Shurn's belief was that OGA did not have many creditors as it had probably been paying its bills on time.

    f.  Mr. Shurn was aware that OGA was still operating and had contracted work for August.

## III.    LEGAL STANDARD

### a.  Standing in an Involuntary Proceeding

A party must have standing in order to pursue a claim or in the alternative, as in this case, seek injunctive relief.   In an involuntary bankruptcy, standing is determined by meeting the qualifications under the Code, which requires that the parties filing the petition be:

> three or more entities, each of which is either a *holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount*, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $15,775[6] more than the value of any lien on property of the debtor securing such claims held by the holders of such claims…

11 U.S.C. § 303(b)(1) (emphasis added).   Each of those three or more entities must meet this requirement by showing that: (1) the claim held is not contingent as to liability; and (2) the claim

---

[6] Subject to adjustment as provided by 11 U.S.C. § 104.

held is not the subject of a bona fide dispute. *Subway Equip. Leasing Corp. v. Sims (Matter of Sims)*, 994 F.2d 210, 213 (5th Cir. 1993) (stating that the "claims against the debtor … are not contingent and not subject to a 'bona fide dispute…') (emphasis added); *see also* 2 William L. Norton, Jr., NORTON BANKR. L. & PRAC. 3d § 22:3 (3d ed. Supp. 2010).

### 1. The Claim Held is not Contingent as to Liability

A claim, as defined under the Bankruptcy Code, is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." § 101(5)(A). The Fifth Circuit has stated that a contingent claim is one where liability of "the debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event and such future occurrence was within the actual or presumed contemplation of the parties at the time the original relationship of the parties was created." *Matter of Sims*, 994 F.2d at 220;[7] *see also In re All Media Properties, Inc.*, 5 B.R. 126, 133 (Bankr. S.D. Tex. 1980, *aff'd*, 646 F.2d 193 (5th Cir. 1981); 7 NORTON BANKR. L. & PRAC. 3d § 141:7. The *In re All Media Properties, Inc.* court stated that "just because a claim is unliquidated, disputed or unmatured apparently does not mean it is contingent" and that "[o]nly holders of claims that are contingent as to liability are denied the right to be petitioning creditors." 5 B.R. at 133; *see also* § 303(b)(1); 7 NORTON BANKR. L. & PRAC. 3d § 141:7. Thus, petitioning creditors must demonstrate that each of their claims are not contingent, without respect to the liquidated nature under the first prong of § 303(b)(1).

### 2. The Claim Held is not Subject of a Bona Fide Dispute

The Bankruptcy Code does not provide a definition for "bona fide dispute." *In re Bates*, 545 B.R. 183, 186 (Bankr. W.D. Tex. 2016). Until *Sims*, the Fifth Circuit had not defined a

---

[7] The Fifth Circuit, using the facts of *Sims*, went on to give the example that "[u]npaid rent is not contingent as to liability. *Matter of Sims*, 994 F.2d at 221.

standard for "bona fide dispute," so it had to rely on guidance from other circuits.   *Matter of Sims*, 994 F.2d at 220-21.   The Objective Standard requires that the bankruptcy court "determine whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt."   *Id.*; *see also In re Rimell*, 946 F.2d 1363, 1365 (8th Cir. 1991); *B.D.W. Assoc. v. Busy Beaver Bldg. Centers, Inc.*, 865 F.2d 65, 66-67 (3d Cir. 1989) (stating that a bona fide dispute exists if there are "'substantial' factual and legal questions raised by the debtor" bearing upon the debtor's liability).   Once again, the burden falls to the petitioning creditors to demonstrate that no bona fide dispute exists and, upon doing so, debtor must submit evidence to the contrary.   *Matter of Sims*, 994 F.2d at 221 (citing to *Rimell*, 946 F.2d at 1365).   Thus, a bankruptcy court, when reviewing the standing of petitioning creditors, "may be required to conduct a limited analysis of the legal issues in order to ascertain whether an objective legal basis for the dispute exists."   *In re Bates*, 545 B.R. at 187 (citing to *In re Rimell*, 946 F.2d at 1365).   The Fifth Circuit focused on "an assessment of witnesses' credibilit[y] and other factual considerations" when performing this fact finding by the bankruptcy court.   *See Matter of Sims*, 994 F.2d at 221.   Therefore, each petitioning creditor must demonstrate that there are not substantial questions of fact and law regarding their claim in order to meet the requirements of § 303(b)(1).

If a petitioning creditor meets the requirements of § 303(b)(1) by demonstrating that their claim is not contingent and is not the subject of a bona fide dispute, then they will have standing to bring an involuntary bankruptcy against the Putative Debtor.

### b.  Preliminary Injunctions and What Must be Demonstrated

The Court may issue injunctions as part of its equitable powers, pursuant to 11 U.S.C.

§ 105.  *In re Twenver, Inc.*, 149 B.R. 950, 952 (D. Colo. 1993).[8]  A preliminary injunction seeks to "prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985).  Some courts have found that the use of § 105 to issue an injunction is, in effect, merely an extension of the automatic stay in situations where non-debtor co-defendants require the protection of the bankruptcy court.  *See generally* 1 NORTON BANKRUPTCY L. & PRAC. § 13:6 n.6; *see also A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986); *In re Divine Ripe, L.L.C.*, 538 B.R. 300 (Bankr. S.D. Tex. 2015) (reviewing whether to extend the automatic stay to the debtor's sole member).  However, such use of equitable powers to issue an injunction should be done with an eye to the requirements of Fed. R. Civ. P. 65.  *In re Continental Air Lines, Inc.*, 61 B.R. 758, 781-82 (S.D. Tex. 1986).  When a party seeks a preliminary injunction, the party "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Green v. Wells Fargo Bank, N.A.*, 575 F. Appx. 322, 323 n.3 (5th Cir. 2014) (stating the four prong test for a preliminary injunction, as stated in *Canal Authority of State of Fla. V. Callaway*, 489 F.2d 567, 572-73 (5th Cir. 1974)).  The movant has the burden of persuasion on each of the four elements.  *Apple Barrel Productions, Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir. 1984); *see also In re Chiron Equities, LLC*, 2016 WL 3621008, at *18 (Bankr. S.D. Tex. July 1, 2018). In many matters, the opposition to a preliminary injunction focuses on some, but not all of the elements required, and, as such, this Court will look at each element.

---

[8] Stating the "Section 105 is the bankruptcy statute akin to the All Writs Act … [and] [i]t empowers the court to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code."  (citing to *In re GSF Corp.*, 938 F.2d 1467, 1475 n.6 (1st Cir. 1991)).

1. *Likelihood of Success on the Merits and of Irreparable Harm in Absence of Preliminary Relief*

Turning to the Fifth Circuit, which in *Callaway*, stated that likelihood of success on the merits is important to analyze as "the granting of a preliminary injunction would be inequitable if the plaintiff has no chance of success on the merits." *Callaway*, 489 F.2d at 576-577; *see Green*, 575 F. Appx. At 325 (vacating the preliminary injunction because "Green has failed to demonstrate a likelihood of success on the merits"). The Fifth Circuit went on to discuss the sliding scale in evaluating both likelihood of success related to the likelihood of irreparable harm and finding that the greater likelihood of one resulted in less being required in the other. *Callaway*, 489 F.2d at 576-577. The Fifth Circuit, in *Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, stated that irreparable harm was a harm "for which there is no adequate remedy at law." 710 F.3d 579, 585 (5th Cir. 2013); *see also Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (holding that "dissipation of assets … would impair the court's ability to grant an effective remedy"); *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). An adequate remedy at law can be as simple as monetary damages, but the availability of such monetary damages may not be an actual adequate remedy at law. *Janvey*, 647 F.3d at 600 (citing to *Lee v. Bickell*, 292 U.S. 415 (1934), *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981), and *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir. 1975)).

In *Winter*, the Supreme Court reviewed, *inter alia*, the Navy's argument contesting the holdings by the lower courts, arguing that "plaintiffs' likelihood of success is low" and that "plaintiffs must demonstrate a likelihood of irreparable injury-not just a possibility…" *Winter*, 555 U.S. at 20-24. The Ninth Circuit employed a lower standard on irreparable harm, using

"possibility of" in lieu of "likely to," when the movant "demonstrate[d] a strong likelihood of prevailing on the merits." *Id.* at 21-24. The Supreme Court agreed with the Navy stating that "the Ninth Circuit's 'possibility' standard is too lenient." *Id.* at 22. However, the Supreme Court never reached the lower courts' holding on plaintiffs' likelihood of success on the merits because other factors dominated their analysis. *Id.* at 23-24.

In light of the foregoing, this Court summarizes the standard for a preliminary injunction, as to the relationship between the likelihood of success and irreparable harm, is that the movant must show that there is both a likelihood of success on the merits and of suffering irreparable harm, but if the movant should demonstrate that one factor has a strong likelihood, then the opposite factor may be subject to a lower standard. *Callaway*, 489 F.2d at 576-77.

## 2. *The Balance of Equities Tips in Their Favor*

In *Janvey*, the Fifth Circuit briefly looked at how the district court had weighed the interests of the competing part, noting that the manner in which the court crafted its injunction demonstrated a level of discretion that appropriately balanced the harms. *Janvey*, 647 F.3d at 601. Similarly, in *Daniel Health Sciences, L.L.C.*, the Fifth Circuit weighed how the district court had balanced the hardships of the parties and found that the court had not erred in finding that the "harms did not outweigh the likely irreparable injury to DHS absent an injunction." 710 F.3d at 585. In *Apple Barrel Productions, Inc.*, the Fifth Circuit stated that, where "harm to defendants is at least as great as the harm to plaintiffs," a "preliminary injunction on these facts will almost certainly guarantee greater harm for the defendants than failure to enjoin will bring to the plaintiffs." 730 F.2d at 390. In *Winter*, the Supreme Court found that the discretion exercised by the lower courts failed to adequately account for how the predictions by Navy officers about the effect of the injunction on Naval operations. *Winter*, 555 U.S. at 27. Thus,

this Court must exercise discretion to determine whether the movant's, here the Petitioning Creditors, harm is not outweighed or equal to that of the Putative Debtor and, if so, then a preliminary injunction may be issued. *Id.*; *see also Apple Barrel Productions, Inc.*, 730 F.2d at 390.

### 3. An Injunction is in the Public Interest

In bankruptcy, the public policy is to have an orderly administration of the debtor's assets via their bankruptcy estate, such that the debtor may be able to gain a fresh start, by satisfying valid claims against that estate. *In re Lots by Murphy, Inc.*, 430 B.R. 431, 436 (Bankr. S.D. Tex. 2010) (citing to *In re T-H New Orleans Ltd. P'ship*, 188 B.R. 799, 807 (E.D. La. 1995), *aff'd*, 116 F.3d 790 (5th Cir. 1997). In the non-bankruptcy context, the public interest in "the development of a historical scientific breakthrough" outweighed a competitor's interest in selling their product. *Daniels Health Sciences, L.L.C.*, 710 F.3d at 585. In *Janvey*, the Fifth Circuit looked at the public interest being served by increasing the likelihood of compensation being made to Ponzi scheme victims by granting an injunction to prevent the dissipation of certain assets. 647 F.3d at 600-01. The situation in *Janvey* is analogous to bankruptcy where the receiver sought to marshal Stanford's assets just like how a trustee for a bankruptcy estate seeks to marshal the debtor's assets. *Compare Janvey*, 647 F.3d at 600-01 *with* 11 U.S.C. §§ 323, 541, 704, 1106, 1202, 1302. Thus, preventing the dissipation of potential assets belonging to the debtor that, pursuant to 11 U.S.C. § 541, may be brought into the bankruptcy estate may be in the public interest, in general. Thus, this Court finds that public interest may be served where the purpose of the preliminary injunction is such that it serves to uphold the twin pillars of bankruptcy by preserving a debtor's, such as the Putative Debtor here, assets that can be potentially used to satisfy valid claims against the bankruptcy estate.

## IV.     CONCLUSIONS OF LAW

### a.  Jurisdiction & Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11."  Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.  28 U.S.C. § 157(a); *see, e.g.,* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).  This is a core matter as it "concern[s] the administration of the estate."  28 U.S.C. § 157(b)(2); s*ee also In Re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999).[9]

This Court may only hear a case in which venue is proper.  28 U.S.C. § 1408.  In its petition, Petitioning Creditors state that OGA has its principal place of business in San Juan, Texas.  Therefore, venue is proper.

### b.  Constitutional Authority To Enter A Final Order

This Court also has an independent duty to evaluate whether it has the constitutional authority to sign a final order.  *Stern v. Marshall*, 131 S. Ct. 2594 (2011).  As Garcia and the Intervenors have stated, the resolution of potential liability against OGA and, by proxy, resolution of said liability, should it exist, by the Insurance Company may raise a *Stern* problem.  However, the potential for future matters may raise complications under *Stern* are an issue for that day, not today.

The instant matter does not alter the relationship of any of the parties, it merely forestalls action until this Court can determine whether the Petitioning Creditors have met the burden to place OGA into chapter 7, or alternatively a chapter 11, bankruptcy.  The Fifth Circuit indicated

---

[9] "[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."

in *Texas Extrusion*, that entry of an order approving or denying a disclosure statement is not a final order because entry of such an order does not mark the end of litigation or a "final determination of the rights of the parties to secure the relief they seek." 844 F.2d at 1154-55; *see also In re Delta Produce, L.P.*, 2016 WL 945185, at *1, *6 (5th Cir. Mar. 11, 2016). As in *Texas Extrusion*, granting the relief sought in the Motion is not a "final determination of the rights of the parties to secure the relief they seek." *Texas Extrusion*, 844 F.2d at 1154-55. Therefore, this Court holds constitutional authority to enter a final order and judgment with respect to the core matter at bar.

### c.  Preliminary Injunctions, § 105, and *Law v. Siegel*

Whether a preliminary injunction is appropriate, under the circumstances of the instant case, is not a simple task. This Court must look at the interests of all parties, the Petitioning Creditors, the Intervenors, Garcia, as well as any potential unnamed creditors who Petitioning Creditors' Counsel, in his arguments made at the July 12, 2016 hearing, alleged were surely there. This Court is also faced with determining whether a preliminary injunction is even permitted under the Code and prevailing case law, as the Intervenors argued in their response. [ECF No. 27 at ¶ 21]. Therefore, this Court will analyze the interrelationship between the preliminary injunction requested by Petitioning Creditors, what § 105 permits, and any effect that may be had by the Supreme Court's holding in *Law v. Siegel*, 134 S. Ct. 1188 (2014).

The Supreme Court in *Law v. Siegel* reviewed whether a bankruptcy court had properly surcharged a debtor's homestead exemption as a result of purported misconduct. *Id.* at 1190-91, 1193-94. The bankruptcy court had relied upon § 105 for its authority to surcharge the debtor's homestead exemption. *Id.* Justice Scalia, writing for the Court, stated that "[i]t is hornbook law that § 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections

of the Bankruptcy Court." *Id.* at 1194 (citing to 2 COLLIER ON BANKRUPTCY ¶ 105.01[2], p. 105–6 (16th ed. 2013)).  Justice Scalia reasoned that this was so because "it is quite impossible to [carry out the provisions of the Code] by taking action that the Code prohibits." *Id.*

It is this very conundrum that this Court faces here—whether § 105 permits ordering a preliminary injunction in an involuntary bankruptcy where the petitioning creditors have not been subject to a hearing on their qualifications pursuant to § 303.  However, Justice Scalia went on to state that the Court has "long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code." *Id.* (citing to *Norwest Bank Worthinton v. Ahlers*, 485 U.S. 197, 206 (1988)).  Thus, if a remedy is otherwise available to the bankruptcy court, pursuant to the Code, and is not otherwise in conflict with another section of the Code, then such remedy is permissibly used under the bankruptcy court's § 105(a) power.

The Court addressed this very contention in *Law*, as the chapter 7 trustee argued that the bankruptcy court's order had not conflicted with the provisions of § 522.  *Id.* at 1195-96 (stating that "Siegel does not dispute the premise that a bankruptcy court's § 105(a) and inherent powers may not be exercised in contravention of the Code.  Instead, his main argument is that the Bankruptcy Court's surcharge did not contravene § 522.").  The Court took this argument to task by first examining the procedural history of the case, noting that the BAP found that "because no one 'timely oppose[d] [Law]'s homestead exemption claim,' the exemption 'became final' before the Bankruptcy Court imposed the surcharge." *Id.* at 1196 (citing to *In re Law*, 2009 WL 7751415, at *2 (B.A.P. 9th Cir. 2009)); *c.f. In re Montemayor*, 547 B.R. 684 (Bankr. S.D. Tex. 2016).  *But see Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–44 (1992) (holding that failure to timely object to an exemption precludes a challenge to such an exemption).  Moreover, even if

the bankruptcy court could re-examine the claimed exemption, "§ 522 does not give courts discretion to grant or withhold exemptions based on whatever considerations they deem appropriate," and "the court may not refuse to honor the exemption absent a valid statutory basis for doing so." *Law*, 134 S. Ct. at 1196.  Ultimately, the Court stated that "whatever … sanctions a bankruptcy court may impose on a … debtor, it may not contravene express provisions of the Bankruptcy Code..." and "in some circumstances a bankruptcy court may be authorized to dispense with futile procedural niceties in order to reach more expeditiously an end result required by the Code."  *Id.* at 1197-98 (citing to dicta in *Marrama v. Citizen Bank of Mass.*, 549 U.S. 365, 376 (2007) (reviewing whether a bankruptcy court's refusal to convert a case from chapter 7 to chapter 13 was an improper use of § 105)); *see also In re Jacobsen*, 609 F.3d 647, 655–61 (5th Cir. 2010); *In re Foster*, 530 B.R. 650, 653–54 (N.D. Tex. 2015) (affirming the bankruptcy court's denial of debtor's motion to convert, which sought to convert from chapter 7 to chapter 11).

Consistent with *Law*, the Fifth Circuit in *In re Zale* reasoned that "a § 105 injunction must be consistent with the rest of the Bankruptcy Code."  62 F.3d 746, 760 (5th Cir. 1995) (citing to *Chiasson v. J. Louis Matherne & Assocs. (In re Oxford Mgmt., Inc.)*, 4 F.3d 1329, 1334 (5th Cir.1993)); *see also In re CEI Roofing, Inc.*, 315 B.R. 61 (Bankr. N.D. Tex. 2004).  The Fifth Circuit further explained that "[a] § 105 injunction cannot alter another provision of the code."  *In re Zale*, 62 F.3d at 760.

Based on the foregoing, this Court finds that it possesses the power to issue a preliminary injunction, pursuant to § 105(a), that may enjoin the parties in the instant case so long as the actions enjoined by the preliminary injunction are "consistent with the rest of the Bankruptcy Code."  *Law*, 134 S. Ct. at 1196; *In re Zale*, 62 F.3d at 760.

### d.  Preliminary Injunction is Appropriate

Having determined that a bankruptcy court may validly issue an order creating a preliminary injunction, pursuant to its § 105(a) powers, so long as the preliminary injunction does not conflict with any other provision of the Code, this Court must now apply the law to the matter at bar.  Here, it is wholly undisputed that the OGA's insurance policy with the Insurance Company is, in fact, an asset of the bankruptcy estate should the Petitioning Creditor's succeed in their § 303 hearing and the Putative Debtor is transformed into an actual debtor.  [ECF Nos. 22 at ¶ 5, 23 at ¶ 7, 27 at ¶ 10].  The parties' argument focuses primarily on whether the proceeds of such insurance policy are, will be, or should be considered property of the estate.  *See generally* [ECF Nos. 22, 23, and 27].  However, the parties are a few steps down the line from the matter before this Court.  As a matter of primary importance, there must first be an actual debtor in order for a bankruptcy estate to be created.  § 541(a) (stating that "all legal or equitable interests of the *debtor* in property as of the commencement of the case).  As this Court has found that it has subject matter jurisdiction over the instant matter, the only preliminary issue is whether the Petitioning Creditors have standing to bring the involuntary bankruptcy, as provided by § 303, and, if so, whether the burden of persuasion has been met in order to grant their requested relief—the preliminary injunction.  This Court will analyze each of these in turn.

### 1.  *Petitioning Creditors' Standing*

As discussed above, the Bankruptcy requires that there be three or more creditors in order for an involuntary proceeding to be brought, and that each of those creditors hold a claim that is not contingent or subject to a bona fide dispute.  § 303(b)(1).  In the Petitioning Creditors initial filing, there were a total of 17 creditors, all alleging the same personal injury claims against OGA.  [Case No. 16-70297, ECF No. 1 at 15] (summarizing each petitioning creditor by

counsel).  Thus, the issue for standing for the Petitioning Creditors is only whether the claims held are not contingent and not subject to bona fide dispute as the required number is far exceeded.  *See* § 303.

The first of the two prongs is that the claims held by Petitioning Creditors must not be contingent.  § 303(b)(1).  The nature of the claims, arising from the Accident, means that each of the claims held by not only the Petitioning Creditors, but also Garcia and the Intervenors, have similarly based claims against OGA and thus, to a certain degree, comparable claims.  [ECF No. 27 at ¶ 2] (acknowledging that Intervenors are of the same class of creditors as Petitioning Creditors); Ex. 14-17 (stating the amount of each petitioning creditor's claim, by their respective attorney in an affidavit).  Certainly, creditors who suffered physical injury as a result of the Accident are not likely to have a claim for the same amount as those representing the estate of a passenger who died as a result of the Accident, but their claims are comparable to another creditor with a similar injury.  As such, each claim by this group of creditors all arose at the same point in time and do not depend on some future occurrence for their claim to spring forth.  *Matter of Sims*, 994 F.2d at 220; *see also* Ex. 9.  Therefore, the claims of each are not contingent in nature, contrary to what Garcia argues, albeit by misstating the requirements of § 303(b)(1), in her brief.  *See* [ECF No. 22 at ¶ 14] (stating that the "Petitioners merely hold potential claims that are contingent and unliquidated").  Noting the court's finding in *All Media Properties*, this Court also finds that the fact that the claims of the Petitioning Creditors, having not signed a Rule 11 settlement with the Insurance Company, may not have a liquidated value for their claim does not make the claim contingent.  *In re All Media Properties, Inc.*, 5 B.R. at 133; *see, e.g.*, Ex. 14-17 (stating that some petitioning creditors are still under the care of health care professionals, which implies that their respective claims may rise higher).  Therefore, this Court finds that the

Petitioning Creditors have adequately met this prong of § 303(b)(1)'s requirement that the claims not be contingent.

For the second prong, Petitioning Creditors' claims must not be subject to a bona fide dispute to have standing. § 303(b)(1). In *Sims*, the Fifth Circuit stated that a disputed debt is one where "there is an objective basis for either a factual or a legal dispute as to the validity of the debt." *Matter of Sims*, 994 F.2d at 220-21; *see also In re Rimell*, 946 F.2d at 1365. In the Motion, Petitioning Creditors state that "[l]iability of the Debtor for these injuries is not subject to a *bona fide* dispute" and evinced by the settlements between the Insurance Company and the other similarly situated creditors as evidence of that. [ECF No. 23 at ¶ 6]; Ex. 10-11 (noting that the Insurance Company had exhausted all policy proceeds to fund settlements with). While this does not necessarily prove that there is not a bona fide dispute as to the Petitioning Creditors' claims, it certainly creates an inference to that end, especially in light of the circumstances of the Accident. *C.f. Atlantic Greyhound Corp. v. Loudermilk*, 110 F.2d 596 (5th Cir. 1940); *FFP Operating Partners LP v. Duenez*, 237 S.W.3d 680, 686 (Tex. 2007); *Airline Motor Coaches, Inc. v. Caver*, 148 Tex. 521 (1950); *Perez v. Arredondo*, 452 S.W.3d 847 (Tex. App. 2014); *Bell v. VPSI, Inc.*, 205 S.W.3d 706 (Tex. App. 2006). Thus, as mentioned in *Bates*, this Court must ascertain if there is an "objective legal basis for the dispute." *In re Bates*, 545 B.R. at 187. As such, this Court finds that the Insurance Company entering into binding Rule 11 settlements with some similarly situated creditors on the basis of their involvement in the Accident, especially in light of the testimony by Mr. Franz regarding his interactions with Mr. William Moye, OGA's Counsel, there cannot be an objective legal basis for dispute. *See, e.g.*, [ECF Nos. 3-3, 3-4]; Ex. 8 and 14. Therefore, the Petitioning Creditors have demonstrated both prongs required under § 303(b)(1) in order to be eligible to file an involuntary proceeding and, as such, have standing to

seek a preliminary injunction.

*Preliminary Injunction – Likelihood of Success and of Suffering Irreparable Harm*

In order to succeed in proving that the Putative Debtor should be placed involuntarily into bankruptcy, in this case a chapter 7 bankruptcy, the Bankruptcy Code requires a showing that "the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount." § 303(h)(1).  However, what matters is whether the debtor *is* paying those debts, not if the debtor *can* pay such debts.  *In re Bates*, 545 B.R. at 186 (noting that the analysis here is "not a balance-sheet insolvency test based on the comparison of assets and liabilit[ies]").  To this end, the *Bates* court relied upon an analysis focused on four factors:  "(1) the number of unpaid claims; (2) the amount of such claims; (3) the materiality of the non-payments; and (4) the debtor's overall conduct in his financial affairs." *Id.* (citing to *In re Moss*, 249 B.R. 411, 422 (Bankr. N.D. Tex. 2000), and  8 COLLIERS ON BANKRUPTCY ¶ 303.31[2] (Alan N. Resnick & Henry J. Sommers, eds., 15th ed. rev. 3/06)).  This Court adopts this test for the purposes of analyzing whether a putative debtor is "generally not paying."  *See, e.g.*, § 303(h)(1).

Here, the first three factors weigh heavily towards the analysis of whether the Petitioning Creditors can demonstrate a likelihood of success as the forth is inapposite as it is not the Putative Debtor's conduct in its financial affairs that is why it has found itself before this Court. First and foremost, OGA's Counsel was present during the entire hearing and offered his own statements, albeit not as testimony, as to what he knew of OGA circumstances and all of which lead this Court to find there is a likelihood that Petitioning Creditors can demonstrate that OGA is not paying claims presently.  Even if this were not the case, there are undisputedly a very large, relatively speaking, number of unpaid claims in the instant case.  *See generally* Ex. 14-17.

The Accident resulted in forty injured and nine dead passengers—each of these passengers represents an unpaid claim against the Putative Debtor as the Insurance Company has not settled with any passengers yet and the number of claims may increase upon factoring in other state law claims, such as the wrongful death claims that counsel for an Intervenor mentioned as having been brought by a child of a deceased passenger.   Second, the amount of such claims.   *See generally* Ex. 14-17.   At a minimum, the Petitioning Creditors have shown that the unpaid claims exceed the $5,000,000 in liability coverage that OGA contracted with the Insurance Company to provide and that covers just some of the total number of claims stemming from the Accident. How far beyond that amount do the claims exceed, only time will tell.   Thirdly, the materiality of the non-payments.   This fact weighs especially heavily for the Petitioning Creditors and, perhaps, is the easiest factor of the four.   As the Insurance Company has announced that the entirety of the liability coverage has been consumed by those creditors that have settled.   The affidavits presented by Petitioning Creditors note significant claims to go unpaid, at least one over $200,000, for a total amount of $343,265.43 for five clients included in a single affidavit.   Ex. 14 at 7; *see also* Ex. 15 (totaling $50,561.92 in claims between two clients); Ex. 16 (totaling $207,287.02 in claims between four clients); Ex. 17 (totaling $70,968.84 in claims between two clients).   The amounts of these claims, especially the higher value claims, are going to have a material impact on the respective petitioning creditors' life if they continue to be unpaid.   As a preliminary analysis of what the Petitioning Creditors will ultimately have to prove at their § 303 hearing, this Court finds that there is a likelihood of success in entering an order for relief on behalf of OGA.

These same factors demonstrate the likelihood of irreparable harm should the preliminary injunction not be entered and enjoin the Insurance Company from settling any claims.   While the

Intervenors have alleged that there may be additional assets available for the Petitioning Creditors to pursue, the scope and amount of such assets is still speculative and, notably, some of the Intervenors are pursuing those same assets.  [ECF No. 27 at ¶ 31]; *see, e.g.*, [ECF No. 27-2].  Therefore, this Court finds that the likelihood of the Petitioning Creditors suffering irreparable harm is significant because, having exhausted all of the liability insurance, it is uncertain if the Petitioning Creditors will have any recourse and the extent to which they may is highly speculative.

### 2.   *Preliminary Injunction – Balance of Harms and Public Interest*

Here, the analysis focuses on the degree to which each party will be harmed if a preliminary injunction should be entered and whether, in consideration of those harms, the harm of one party outweighs another.  *Apple Barrel Productions, Inc.*, 730 F.2d at 390.  In evaluating these harms, this Court should take into consideration the predictions of the Putative Debtor as to how a preliminary injunction would affect it.  *Winters*, 555 U.S. at 27 (stating that the lower courts failed to adequately consider the Naval officers' opinions about the effect of the injunction on naval operations).  Here, the balance of harms certainly slides in favor of the Petitioning Creditors who are situated to be left out in the cold as the settlements pending with the Insurance Company will completely exhaust the liability policy, thus leaving them with limited recourse.  *See* Ex. 14-17; *c.f.* Ex. 9-11 (noting the exhaustion of policy proceeds).  Whereas, the Putative Debtor may not suffer any harm, and certainly none was shown to be anticipated, due to the preliminary injunction being entered beyond the harm that it already faces due to the Accident and its looming fate of potentially being forced, involuntarily, into chapter 7 or chapter 11 bankruptcy.  However, the more important consideration here is whether the liability policy may at some point represent a potential asset of the bankruptcy estate, should Petitioning Creditors

succeed in carrying their § 303 burden. *Compare In re Edgeworth*, 993 F.2d 51 (5th Cir. 1993) *with In re Vitek*, 51 F.3d 530 (5th Cir. 1995); *see also* § 541; § 303. The parties dispute whether the proceeds of the liability policy are, in fact, eligible to be property of the estate, but that is a matter for the future. *Compare* [ECF Nos. 3 and 23] *with* [ECF Nos. 22 and 27]. As such, this Court finds that the balance of harm favors the entry of the preliminary injunction in order to protect potential assets of the estate from dissipation.

The public interest here is found in the public policy goals of the bankruptcy system in general. The bankruptcy system operates by balancing the interests of creditors and debtors through the equitable administration of the bankruptcy estate. A preliminary injunction enjoining settlements of the liability policy, which is undisputedly an asset of the Putative Debtor's potential bankruptcy estate, is in the public interest because it maintains status quo by not dissipating any potential assets of bankruptcy estate. *Janvey*, 647 F.3d at 600-01; *see, e.g.*, § 541. Therefore, the public interest can be viewed through the eyes of creditors of the Putative Debtor, not just those arguing on the instant motion. *In re Lots by Murphy, Inc.*, 430 B.R. at 436. Accordingly, this Court finds that public interest favors entering a preliminary injunction, consistent with the public policy objectives of the bankruptcy system.

            *3. Conclusion*

Based on the foregoing analysis on the four factors required for entering a preliminary injunction, this Court finds that the Petitioning Creditors have met each element. The Petitioning Creditors have demonstrated a likelihood of success on the merits by, provisionally, meeting the requirements of § 303(b)(1) and an objective likelihood that the Putative Debtor is "generally not paying" as required by § 303(h). Furthermore, the Petitioning Creditors have demonstrated a likelihood of irreparable harm if the Insurance Company were to settle all claims thus exhausting

the liability policy, that the balance of harms weighs in favor of the Petitioning Creditors by entering a preliminary injunction enjoining settlements that will only delay, but not prevent, the binding settlements made between certain parties and the Insurance Company.   Finally, the Petitioning Creditors have shown that the public interest is in favor of a functioning bankruptcy system that equitably resolves valid claims between creditors and debtors.

## V.      CONCLUSION

Before this Court is the Petitioning Creditors Motion that seeks a preliminary injunction to enjoin settlements by the Insurance Company until this Court can conduct a hearing to determine whether to issue an order for relief, pursuant to § 303(h).   The Petitioning Creditors have standing by provisionally demonstrating that they satisfy the requirements of § 303(b)(1) in order to file the involuntary petition.   Having determined that this Court is authorized to enter a preliminary injunction so long as the preliminary injunction is consistent with the Bankruptcy Code, this Court analyzed the four required elements that the Petitioning Creditors must demonstrate for a preliminary injunction to be issued.   This Court found that the Petitioning Creditors carried the burden on each factor, especially when considering that the preliminary injunction is, in essence, merely an extension of § 362's stay on the Insurance Company's liability policy, which is undisputedly an asset of the Putative Debtor's bankruptcy estate. Accordingly, this Court holds that the Motion, [ECF No. 3], should be **GRANTED**. Furthermore, as the basis for relief is substantially the same in Petitioning Creditors' Adversary Motion, excepting for the declaratory relief, this Court holds that the Adversary Motion, [Case No. 16-7016, ECF No. 2], should be **GRANTED** as to the preliminary injunction similarly sought and **DENIED** as to the declaratory relief sought as it is not yet ripe.

An Order consistent with this Memorandum Opinion will be entered on the docket

simultaneously herewith.


SIGNED 07/27/2016.


Eduardo V. Rodriguez
United States Bankruptcy Judge