

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

ENTERED
07/24/2017

| | | |
|---|---|---|
| **IN RE:** | § | |
| **OGA CHARTERS, LLC** | § | **CASE NO: 16-70297** |
|     Debtor | § | |
| | § | **CHAPTER 7** |
| | § | |
| **MICHAEL B SCHMIDT, TRUSTEE** | § | |
|     Plaintiffs | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 16-7016** |
| | § | |
| **MARTA VILLARREAL,** *et al* | § | |
|     Defendants | § | |

**MEMORANDUM OPINION**
**IN SUPPORT OF CERTIFICATION OF A DIRECT APPEAL**
**TO THE FIFTH CIRCUIT COURT OF APPEALS**

    Pending before the Court is a single matter, self-styled as "Motion for Certification for Direct Appeal to the Fifth Circuit Court of Appeals (Unopposed)," that was filed by the "Settled Claimants"[1] on July 6, 2017. ECF No. 111 (the "*Motion*"). The Motion seeks certification of Settling Creditors' appeal direct to the Fifth Circuit Court of Appeals under 28 U.S.C. § 158(d). *See generally id.* Settling Creditors also filed their Notice of Appeal on July 6, 2017. ECF No. 110. Likewise, Beatrice Garcia ("*Garcia*") filed her Notice of Appeal on July 7, 2017 and a notice incorporating the Motion by reference. ECF Nos. 115–116. On July 19, 2017, Michael B. Schmidt, Plaintiff and chapter 7 trustee, and Petitioning Creditors,[2] filed their Joint Notice of Cross Appeal. ECF No. 142 (the "*Cross Appeal*").[3]

---

[1] "Settled Claimants" are Ricardo Villanueva of Thornton, Biechlin, Reynolds, & Guerra, LC, attorney for Myra Lynn Martinez and Jorge Lopez, Individually and as Representatives of the Estate of Maricela Vega Lopez, deceased ("Villanueva"); Javier Villarreal of the Law Office of Javier Villarreal, attorney for Yvette Torres Aguilar, Individually and on behalf of the Estate of Altagracia Torres, deceased; and Maria Del Rosario Navarro, Individually and on behalf of the Estate of Jaime Navarro, Sr. deceased; and Jesus Navarro, Jaime Navarro, Jr., and Elizabeth Navarro Individually as surviving children of Jamie Navarro, Sr., deceased; and Maria Campa, Individually and on behalf of the Estate of Dora Nelly Gonzalez; deceased; and Maria Elva Cantu, Individually ("Villarreal"); and Francisco "Frank" Guerra IV of Watts Guerra, LLP, attorney for Odella Rickard, Individually and on Behalf of the Estate of Emma R. Samudio, George Garza, Suzanne Hughes, and Olga Garza ("Guerra"). ECF No. 111 at 2 n.1. For the purposes of this Certification, and consistent with prior orders in this case, the Court refers to these litigants as the "***Settling Creditors***."

[2] *See* ECF No. 142 at 1, n.1.

[3] Contemporaneous to their notice of appeal, Trustee and Petitioning Creditors separately filed a copy of this Court's Order, ECF No. 107, as an attachment to their notice of appeal. *See* ECF No. 143; *see also* Fed. R. Bankr. P. 8003(a)(3)(B) (requiring that a notice of appeal only "be *accompanied* by the … order … being appealed …").

## Statutory and Rule Authority

This certification is made pursuant to 28 U.S.C. § 158(d)(2). It is governed by Fed. R. Bankr. P. 8006.

## Factual Background

A bus owned by OGA Charters, LLC ("*OGA*") was involved in an accident on a route to the Kickapoo Lucky Eagle Casino near Laredo, Texas and resulted in the death of nine passengers and the injury of approximately forty others giving rise to personal-injury, survival, and wrongful-death claims. *See generally* ECF No. 78 at 10. OGA owns an insurance policy through New York Marine and General Insurance Company that provides, among other coverages, $5,000,000 in liability coverage. ECF Nos. 76, 77.

On July 8, 2016, Petitioning Creditors filed an involuntary bankruptcy against OGA. Bankr.[4] ECF No. 1. OGA consented to an entry of the order for relief on August 18, 2016, which was entered by this Court on August 22, 2016. Bankr. ECF Nos. 52, 55.

Separately, Petitioning Creditors filed an adversary proceeding, the instant case, seeking to enjoin the use of the insurance policy proceeds and to have them declared an asset of OGA's bankruptcy estate. *See generally* ECF Nos. 1, 3.

Section 541 of Title 11 of the United States Code[5] enumerates which assets owned by a debtor at the time of filing bankruptcy are includable or excludable from the bankruptcy estate. The issue of whether proceeds from a debtor-owned insurance policy are property of a bankruptcy estate is entirely dependent, factually, on the type of coverage provided by the policy and who may benefit from the policy. *See generally In re Babcock & Wilcox Co.*, 69 F. App'x 659 (5th Cir. 2003); *In re Equinox Oil Co.*, 300 F.3d 614 (5th Cir. 2002); *In re Vitek, Inc.*, 51 F.3d 530 (5th Cir. 1995); *In re Edgeworth*, 993 F.2d 51 (5th Cir. 1993); *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391 (5th Cir. 1987).

The instant appeal arises out of this Court's Memorandum Opinion and Order determining the proceeds of OGA's insurance policy should be declared property of the bankruptcy estate. ECF Nos. 106–107, 110, 115.

## The Question Itself

*"Are proceeds of a debtor-owned liability insurance policy property of the debtor's bankruptcy estate when: (1) the policy covers the debtor's liability to third parties; (2) the debtor cannot make a legally cognizable claim against the policy; and (3) the claims by third parties*

---

[4] References to "Bankr." ECF filings refer to filings in OGA's bankruptcy, Case No. 16-70297.

[5] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.

*exceed the coverage limits of the policy." C.f.* ECF No. 111 at 6, ¶ 21 ("The critical issue in this case that must be decided is whether the proceeds of a liability insurance policy are property of the estate (the "Legal Issue").").

## The Relief Sought

Settling Creditors seek a declaration that proceeds of a debtor-owned liability insurance policy that covers the debtor's liability to third parties and is subject to claims in excess of its coverage limits are not property of the debtor's bankruptcy estate. *Id.* at 6–7 (discussing resolution by the Fifth Circuit and reversal of this Court's Order).

## Procedural Background

Under Rule 8006, a party may request certification of their appeal direct to the court of appeals that the bankruptcy court may grant so long as the movant meets three qualifications: (1) the certification has been filed; (2) a timely appeal has been taken under Rule 8003 or 8004; and (3) the notice of appeal has become effective under Rule 8002. Fed. R. Bankr. P. 8006(a)(1)–(3). For the first requirement, the bankruptcy court may simply look to the docket to determine whether a certification has been timely filed by the movant within 30 days of the notice of appeal becoming effective. Fed. R. Bankr. P. 8006(b). Rules 8003 and 8004 both require that the notice of appeal be filed within the time prescribed by Rule 8002, which is 14 days. *Compare* Fed. R. Bankr. P. 8003(a)(1) *and* Fed. R. Bankr. P. 8004(a)(1) *with* Fed. R. Bankr. P. 8002(a)(1). Rule 8003 governs appeals as of right under § 158(a)(1), (2) while Rule 8004 applies to appeals by leave pursuant to § 158(a)(3). Finally, a notice of appeal is typically effective under Rule 8002 when it is filed with the bankruptcy court. Fed. R. Bankr. P. 8002 advisory committee's note to 2014 amendment.

| June 23, 2017 | Court issues Memorandum Opinion and Order. ECF Nos. 106–107 |
| July 6, 2017 | Settling Creditors file a notice of appeal, which is timely pursuant to Fed. R. Bankr. P. 8002(a)(1). July 6, 2017 is the "effective" date under Rule 8002(a). |
| July 6, 2017 | Settling Creditors file a request for certification of a direct appeal, noting that it is unopposed. |
| July 7, 2017 | Garcia files a notice of appeal, which is also timely under Rule 8002(a)(1), and has an "effective" date of July 7, 2017 per Rule 8002(a). |
| July 7, 2017 | Garcia files a notice that incorporates by reference Settling Creditor's request for certification of a direct appeal under Fed. R. Civ. P. 10(c). |
| July 19, 2017 | Plaintiff and Petitioning Creditors file a notice of cross appeal, which is timely and appropriately filed pursuant to Fed. R. Bankr. P. 8002(a)(3), 8003(b)(1). |

| July 24, 2017 | This Certification is issued and is timely under Fed. R. Bankr. P. 8006(b). |
| August 7, 2017 | Last day in which this matter would be "pending" before this Court under Fed. R. Bankr. P. 8006(e) |

Procedurally, the Court finds that the Motion was timely filed by the Settling Creditors, as was Garcia's notice adopting by reference the Motion. *Compare* ECF Nos. 106–107 *with* ECF Nos. 110, 111, 115–116. Further, the Court finds that the Cross Appeal was timely filed by Plaintiff and Petitioning Creditors. *Compare* ECF No. 142 *with* ECF No. 111 *and* Fed. R. Bankr. P. 8002(a)(3).

## Reasons Why the Direct Appeal Should be Allowed

Section 158(d) provides that an appeal may be certified directly to the court of appeals by the bankruptcy court, *inter alia*, when the issue on appeal "the judgment, order, or decree involves a question of law as to which there is no controlling decision … resolution of conflicting decisions … or an immediate appeal … may materially advance the progress of the case or proceeding in which the appeal is taken." § 158(d)(2)(i)–(iii). Upon certification of the direct appeal by the bankruptcy court or district court, the appeal must still be authorized by the court of appeals. *Id.*

*Section 158(d)(2)(A)(i) – No Controlling Decision*

The Court's Memorandum Opinion discusses the continuum of holdings by the Fifth Circuit in the area of insurance proceeds that provide for a general rule, as announced in *Edgeworth*, of liability insurance proceeds not being assets of the bankruptcy estate if the debtor cannot make a legally cognizable claim against the proceeds. 993 F.2d at 55–56 & n.20–21. Circuit Judge Edith H. Jones, writing for the court, distinguished whether a secondary impact, such as "the policy limit was insufficient to cover … claims or competing claims to proceeds," was alleged or if Dr. Edgeworth could assert a legally cognizable claim upon the proceeds. *Id.* at 55–56 & n.21. Since *Edgeworth*, the Fifth Circuit has only touched on the issue of exhaustion of policy proceeds tangentially in *In re Vitek*. 51 F.3d at 530–32. While the facts of *Vitek* include claim exhaustion, it was not an issue before the Fifth Circuit on appeal. *See generally id.* at 531–38. It could be concluded that the *Vitek* court implicitly approved the proceeds of the debtor's insurance policy being diverted to the debtor's bankruptcy estate, vis-à-vis the settlement, subject to an action by the co-insureds against the insurer. *Id.* at 538.

Moreover, the issue in this case involves competing public policy interests. Namely the equal treatment of creditors in bankruptcy contrasted with Texas' public policy, as announced in *Stowers*, for efficient and expedient resolution of claims by insurance carriers. *G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929).

Thus, the Court finds that the Motion should be certified because there is not a controlling decision by the Fifth Circuit or by the Supreme Court of the United States that specifically addresses the particular set of facts presented by the instant case. Further, the issue

presents a matter of public importance.

*Section 158(d)(2)(A)(ii)*

For similar reasons as to the prior section, there are not necessarily conflicting decisions by the Fifth Circuit. The decisions do, however, create an appearance of conflict between themselves. Other circuits have decided the matter differently.

*Section 158(d)(2)(A)(iii)*

The Court's Memorandum Opinion and Order resolved dueling motions for summary judgment between the Settling Creditors, Garcia, Petitioning Creditors, and the Trustee. As such, and for the reasons stated above in regards to § 158(d)(2)(A)(i), an immediate appeal from the Court's Order would materially advance the progress of the instant case as a resolution by the Fifth Circuit would settle the dispute.

*Section 158(d)(2)(A)*

Alternatively, the Court must certify an appeal directly to the court of appeals when "all of the appellants and appellees (if any) [act] jointly." § 158(d)(2)(A), (B)(ii). Here, Settling Creditors allege that all of the parties have conferred regarding the Motion and "agree that this appeal should be certified to be heard by the Fifth Circuit." ECF No. 111 at 5, ¶ 16. At a hearing conducted on July 17, 2017, Michael Schmidt, chapter 7 trustee, represented to the Court that he was not opposed to the Motion. Also at the July 17, 2017 hearing, Counsel for Petitioning Creditors represented that he intended to file a cross appeal regarding only a portion of the order. *See* Minute Entry 7/17/2017. Such an appeal was jointly filed on July 19, 2017 by Petitioning Creditors and Plaintiff. ECF No. 142; *see also* ECF No. 143. Thus at present, all parties to the instant case have filed a notice of appeal regarding the Court's Order, ECF No. 107, albeit the Cross Appeal does not specifically request certification for direct appeal. *Compare* Fed. R. Bankr. P. 8006(f)(3) *with* ECF No. 142. Irrespective of this, the Court finds that the majority of the appellants and appellees, pursuant to Plaintiff's oral representation to this Court, have requested that this Court certify the appeal.

## Conclusion

The Court has found that the Motion demonstrates at least one of the criteria for certification under § 158(d)(2)(A), thus it certifies it's Order, ECF No. 107, to the Court of Appeals for the Fifth Circuit under 28 U.S.C. § 158(d)(2)(A).

## Copies of Order and Memorandum Opinion

Attached as Exhibit "A" is the Court's Memorandum Opinion, ECF No. 106.

Attached as Exhibit "B" is the Court's Order, ECF No. 107.

**Separate Certification**

As required by Fed. R. Bankr. P. 8006(f)(5), a separate document contains this Court's certification.  Service on the parties under Rule 8003(c)(1) will occur upon the entry of the certification and this Memorandum Opinion on the docket.

Signed: July 24, 2017

Eduardo V. Rodriguez
United States Bankruptcy Judge

# EXHIBIT "A"



# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

ENTERED
06/23/2017

| | | |
|---|---|---|
| IN RE: | § | |
| OGA CHARTERS, LLC | § | CASE NO: 16-70297 |
|     Debtor | § | |
| | § | CHAPTER  7 |
| | § | |
| MICHAEL B SCHMIDT, TRUSTEE | § | |
|     Plaintiff | § | |
| | § | |
| VS. | § | ADVERSARY NO. 16-7016 |
| | § | |
| MARTA  VILLARREAL, *et al* | § | |
|     Defendants | § | JUDGE EDUARDO V. RODRIGUEZ |

## <u>MEMORANDUM OPINION</u>
### [*Resolving ECF Nos. 31, 58, 67, 85, 86, 87*]

## I. INTRODUCTION

It is an old adage that "no one has the right to be sorry for [themselves] for a misfortune that strikes everyone."[1]   Here, lives of loved ones have been lost, while many others were injured.  This is a story of loss and tragedy, yet the case *sub judice*, provisions not only for the consideration of a matter of first impression, it abruptly catapults this Court into an unfortunate set of facts and circumstances requiring, *inter alia*, a determination of whether Debtor's insurance policy and proceeds thereof are property of  Debtor's bankruptcy estate.

This case arises from an accident that occurred on May 14, 2016, while a bus owned by OGA Charters, LLC ("**OGA**") was transporting passengers to the Kickapoo Lucky Eagle Casino near Laredo, Texas and resulted in the death of nine passengers and the injury of approximately forty others giving rise to personal-injury, survival, and wrongful-death claims.  *See generally*

---

[1] Marcus Tullius Cicero

[ECF No. 78 at 10].[2]  At the time of the Accident, New York Marine and General Insurance Company (the "*Insurer*") insured OGA for the total amount of $5 million dollars in liability coverage, in addition to coverage for collision and comprehensive.  [ECF Nos. 76, 77].

Pending before this Court are six matters:  "Intervenors'[3] Motion For Abstention Pursuant to 28 U.S.C. §1334(c)(1) or (c)(2)," [ECF No. 31] ("*Motion for Abstention*"); "Motion of Settled Claimants to Dismiss Complaint for Lack of Subject Matter Jurisdiction," [ECF No. 58]; "Motion of Settled Claimants to Dismiss Chapter 7 Trustee's Amended Complaint for Lack of Subject Matter Jurisdiction," [ECF No. 67][4] ("*Motion to Dismiss*"); "Motion of Settled Claimants for Summary Judgment," [ECF No. 85] ("*Motion for Summary Judgment*"); "Beatrice Garcia's Notice of Adoption by Reference of Motion of Settled Claimants for Summary Judgment," [ECF No. 86] (the "*Notice*"), and "Chapter 7 Trustee's and Petitioning

---

[2] "Bankr. ECF" refers docket entries made in the Debtor's bankruptcy case, No. 16-70297.  The Court will cite to the record in Adversary Proceeding, No. 16-7016, unless otherwise noted.

[3] Intervenors are Ricardo Villanueva of Thornton, Biechlin, Reynolds, & Guerra, LC, attorney for Myra Lynn Martinez and Jorge Lopez, Individually and as Representatives of the Estate of Maricela Vega Lopez, deceased ("Villanueva"); Javier Villarreal of the Law Office of Javier Villarreal, attorney for Yvette Torres Aguilar, Individually and on behalf of the Estate of Altagracia Torres, deceased; and Maria Del Rosario Navarro, Individually and on behalf of the Estate of Jaime Navarro, Sr. deceased; and Jesus Navarro, Jaime Navarro, Jr., and Elizabeth Navarro Individually as surviving children of Jamie Navarro, Sr., deceased; and Maria Campa, Individually and on behalf of the Estate of Dora Nelly Gonzalez; deceased; and Maria Elva Cantu, Individually ("Villarreal"); and Francisco "Frank" Guerra IV of Watts Guerra, LLP, attorney for Odella Rickard, Individually and on Behalf of the Estate of Emma R. Samudio, George Garza, Suzanne Hughes, and Olga Garza ("Guerra"). [ECF No. 85 at 2 n.1] ("*Intervenors*" or "*Settling Creditors*").

[4] The Settling Creditors initially filed a motion seeking dismissal on October 11, 2016.  [ECF 58].  However, Trustee certifies that service of the Amended Complaint was completed on October 5, 2016.  [ECF 78 at 10].  Settling Creditors subsequently filed their Motion to Dismiss, which, in this version, alleges that it is seeking dismissal the Amended Complaint for lack of subject matter jurisdiction.  *See generally* [ECF No. 67].  The Motion to Dismiss was filed three days before the Amended Complaint was filed or the Court approved the Trustee's motion seeking the amendment of the complaint.  *Compare* [ECF No. 67] *with* [ECF No. 78] *and* [ECF No. 73]; *see also* [ECF No. 68] (answering the Amended Complaint within the time permitted by Fed. R. Civ. P. 15(a)(3)).  As noted in the motion to amended, Trustee had already served the Amended Complaint on the parties absent the Court's approval of his motion to amend and the same certificate of service was used when the Amended Complaint was formally filed.  *Compare* [ECF No. 78 at 10] *and* [ECF No. 61-2 at 10] *with* [ECF No. 73] (granting Trustee's motion to amend).  As such, the Court is treating the Motion to Dismiss as an amendment to the Settling Creditors' original motion. [ECF No. 58], which is deemed moot as having been amended.

Creditors'[5] Joint Response to Movant-Creditors Motion for Summary Judgment (Adv. Doc. #85) and Beatrice Garcia's Notice of Adoption by Reference [Adv. Doc. #86] and Joint Cross-Motion for Summary Judgment," [ECF No. 87] (the "***Cross Motion for Summary Judgment***").  This Court considers the pleadings and briefs filed by the parties; the arguments presented at the hearing held on February 24, 2017; all other evidence in the record; and relevant case law.  For the reasons discussed herein, the Court finds that Settling Creditors' Motion for Abstention, [ECF No. 31], should be denied as to both mandatory and discretionary abstention, the "Motion of Settled Claimants to Dismiss Complaint for Lack of Subject Matter Jurisdiction," [ECF No. 58], should be denied as moot as having been amended, Settling Creditors' Motion to Dismiss, [ECF No. 67], should be denied, Settling Creditors' Motion for Summary Judgment, [ECF No. 85], and the associated Notice filed by Garcia, [ECF No. 86], should both be denied, and Trustee and Petitioning Creditors' Cross Motion for Summary Judgment, [ECF No. 87], should be granted and OGA's insurance policy, including related proceeds thereof, are declared property of OGA's bankruptcy estate.

## II. FINDINGS OF FACT

This Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rules of Bankruptcy Procedure 7052, which incorporates Fed. R. Civ. P. 52, and 9014. To the extent that any Finding of Fact constitutes a Conclusion of Law, it is adopted as such.  To the extent that any Conclusion of Law constitutes a Finding of Fact, it is adopted as such.  The

---

[5] "The Original Petitioning Creditors filing the original Involuntary Petition are: Marta Villarreal; Idolina Rivera; Mario Alberto Zuniga; Lizbeth Nicole Rangel; Thelma Hernandez; Manuel Salinas; Carlota Salinas; Guadalupe Carrillo, Jr.; Elizabeth Cristina Carrillo; Jose Cardenas; Irma Cardenas; Dora Pena; Imelda Guerrero Ochoa, as Rep. of the Estate of Francisca Guerrero, Deceased; Hortencia Robles; Natalie Alaniz; Jaime Garza, on behalf of the Estate of Adelfa Garza, Jomara De Jesus Weatherby, on behalf of the Estate of Maria de Jesus Musquiz, Deceased. The following persons subsequently joined as petitioning creditors: Daniel Zuniga, Rosemary Bernal, Adela Cisneros Franco and Sergio Jose Cisneros, Lisa Garza, Jaime Garza, Jr., Rolando Garza, Ophelia McCarthy, Dora Rivera, Jacqueline Lopez and Jesennia Lopez Geddes."   [ECF  No. 87 at 1 n.1] (collectively, the "***Petitioning Creditors***").

Court issued a prior opinion in this matter.  [ECF No. 32 at 3–6]; *In re OGA Charters, LLC*, 554 B.R. 415, 420–22 (Bankr. S.D. Tex. 2016).  To the extent that the Court made oral findings and conclusions on the record at the February 24, 2017 hearing, this Memorandum Opinion supplements and supersedes those findings and conclusions.

On May 14, 2016, a bus carrying passengers, many of which are before this Court, was involved in an accident during an excursion to the Kickapoo Lucky Eagle Casino (the "***Accident***").  [Bankr. ECF No. 3 at ¶ 9]; [Bankr. ECF No. 22 at ¶ 1]; [Bankr. ECF No. 23 at ¶ 2]; [Bankr. ECF No. 27 at ¶ 2].  This is undisputed by the parties.[6]  Also undisputed is, as a result of the Accident, the passengers, including the subsequent representatives for their estates or children, respectively, before this Court became creditors of OGA.  Furthermore, OGA maintained a liability policy with the Insurer that would cover a maximum of $5,000,000.00 in liability (the "***Proceeds***"), in addition to coverage for collision and comprehensive.  [Bankr. ECF No. 3-4 at 1]; *see also* [ECF No. 85-3] (the "***Policy***").

On July 8, 2016, the Petitioning Creditors filed their involuntary petition.  [Bankr. ECF No. 1].  Two days later on July 10, 2016, Petitioning Creditors filed their "Verified Emergency Motion to Enjoin, Pursuant to 11 U.S.C. § 105, and Rule 7065, BRP, the Dissipation of Assets by the Debtor and its Insurers Made Outside the Ordinary Course of its Operations."  [Bankr. ECF No. 3].  The Petitioning Creditors stated that Insurer had allegedly reached settlements, which caused the entirety of OGA's liability insurance coverage to be exhausted.  *Id.* at ¶ 13-15; [Bankr. ECF Nos. 3-2, 3-3, and 3-4].  On July 11, 2016, Petitioning Creditors also filed an adversary proceeding against OGA.  [ECF No. 1].  In the adversary, Petitioning Creditors filed a motion wherein they sought declaratory relief just as they had done in the main case.  *Compare* [ECF No. 2] *with* [Bankr. ECF No. 3].

---

[6] Even if this were disputed, the Accident is a matter that could be judicially noticed under Fed. R. Evid. 201.

On July 12, 2016, this Court held a preliminary hearing on the Petitioning Creditor's motions. [Bankr. ECF No. 4] (setting a hearing on [Bankr. ECF No. 3] and [ECF No. 2]). At that hearing, the Petitioning Creditors presented their arguments for why the Court should issue a temporary restraining order. *C.f.* [Bankr. ECF No. 2]. In addition, Intervenors' Counsel argued why a temporary restraining order should not be entered.

As a result of the July 12, 2016 hearing, this Court entered a temporary restraining order that enjoined certain parties from undertaking certain actions related to the Accident and the insurance policy and set a hearing on the merits for July 26, 2016. *See generally* [Bankr. ECF No. 13]. The Court also ordered the parties to file briefing on the issue of whether the Proceeds of OGA's Policy are property of OGA's bankruptcy estate as the insurance policy is undisputedly property of OGA's bankruptcy estate. [Bankr. ECF No. 11] (stating "[t]he court ordered briefing on issue of whether or not insurance proceeds are property of the Estate"); *In re Edgeworth*, 993 F.2d 51, 55 (5th Cir. 1993). On July 21, 2016, the parties filed their respective briefs. [Bankr. ECF Nos. 22, 23, 25, 27]; [ECF Nos. 17, 18, 20].

At the July 26, 2016 hearing, Counsel for the Petitioning Creditors, Counsel for the Intervenors, Counsel for Garcia, and Counsel for OGA appeared before this Court. Mr. Steven Shurn, Counsel for OGA, had been recently retained and announced on the record and via stipulation submitted to the Court that service of process of OGA could be effectuated through his office. Counsel for each of the above referenced parties presented argument to this Court on the respective motions in the main bankruptcy case and adversary proceeding. Furthermore, Mr. Shurn represented that OGA had received an insurance payment in the amount of $20,000.00 for damage to its bus that was involved in the accident. [ECF No. 32 at 6]; *see also* [Bankr. ECF No. 36] (noting the $20,000.00 payment and ordering that it was not affected by the preliminary

injunction).  The Court entered its ruling the following day granting the request for a preliminary injunction.  [Bankr. ECF Nos. 35, 36]; *see also* [ECF Nos. 32, 33].

On August 22, 2016, OGA consented to the entry of an order for relief and Michael B. Schmidt was subsequently appointed chapter 7 trustee ("***Trustee***").  [Bankr. ECF No. 55].

On October 11, 2016, the Settling Creditors filed their Motion of Settled Claimants to Dismiss Complaint for Lack of Subject Matter Jurisdiction without any exhibits attached.  [ECF No. 58].  Six days later, the Settling Creditors filed their "Motion of Settled Claimants to Dismiss Chapter 7 Trustee's Amended Complaint for Lack of Subject Matter Jurisdiction," which, like the prior motion to dismiss, also did not have any exhibits attached.  [ECF No. 67].[7] In the Motion to Dismiss, the Settling Creditors allege that the Court lacks subject matter jurisdiction as (1) the Proceeds of the Policy are not property of the estate under Fifth Circuit precedent; and (2) the secondary impact exception, which Settling Creditors argue does not exist, does not apply to a chapter 7 case where there are few assets within the estate.  *See generally id.* The Trustee filed his response to the Motion to Dismiss wherein he argues that Fifth Circuit precedent not only sets forth that the proceeds from the Insurer's policy with OGA is property of the bankruptcy estate, but also establishes the secondary impact exception.  *See generally* [ECF No. 69].

On October 20, 2016, the Court granted Trustee's request to file an amended complaint in order to realign the parties following his entry into this matter.  Additionally, Trustee filed his First Amended Complaint on the same date.  [ECF No. 73]; [ECF No. 78] (the "***Amended Complaint***"); *see also* [ECF No. 61] (requesting an order from the Court on amending the complaint and realignment of the parties due to the entry of an order for relief and Trustee's subsequent appointment).  The filing of the Amended Complaint mooted certain motions filed by

---

[7] *See supra*, note 4.

the Settling Creditors.  *See generally* [ECF Nos. 51, 52].

On December 16, 2016, Settling Creditors filed their Motion for Summary Judgment. [ECF No. 85].  Shortly thereafter, Beatrice Garcia ("***Garcia***") filed her Notice.  [ECF No. 86]. On January 5, 2017, Trustee and Petitioning Creditors filed their Cross Motion for Summary Judgment, which served as both a response to the Motion for Summary Judgment, Garcia's notice, and their own motion for summary judgment.  [ECF No. 87].  Settling Creditors filed their reply to the Cross Motion for Summary Judgment, which was likewise adopted by Garcia. [ECF No. 93]; *see also* [ECF No. 94].

On February 24, 2017, the Court conducted a hearing on the Settling Creditors' Motion for Summary Judgment and Cross Motion for Summary Judgment (the "***Hearing***").  *See also* [ECF Nos. 85, 87].  At the Hearing, Counsel for the Settling Creditors, Petitioning Creditors, the Insurer, Garcia, and the Trustee were all present and offered arguments to the Court on the competing Motions for Summary Judgment.  Settling Creditors offered the Court hard copies of the exhibits attached to their Motion for Summary Judgment at the hearing.

### III. LEGAL STANDARD

#### A.  Motion for Summary Judgment

In the Federal Rules of Civil Procedure, summary judgment is proper when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also In re Placid Oil Co.*, 753 F.3d 151, 154 (5th Cir. 2014). Rule 7056 incorporates Fed. R. Civ. P. 56 in adversary proceedings.  Fed. R. Bankr. P. 7056.[8] "The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir.

---

[8] "Rule 56 F.R.Civ.P. applies in adversary proceedings, except that any motion for summary judgment must be made at least 30 days before the initial date set for an evidentiary hearing on any issue for which summary judgment is sought, unless a different time is set by local rule or the court orders otherwise."

2008).  Rule 56 provides that the movant may support factual positions by:

> citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B).  Additionally, Rule 56 provides that an opposing party may object to the material cited by the movant when the material is not presented in a form that is admissible as evidence in the proceeding.  Fed. R. Civ. P. 56(c)(2).  Furthermore, Rule 56 also provides that courts may consider other material found in the record beyond what has been cited by a party.  Fed. R. Civ. P. 56(c)(3).  Finally, Rule 56 provides that affidavits or declarations may be "used to support or oppose a motion," but "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  The courts must, in determining whether there is a material issue, interpret "the facts and the inferences to be drawn there from in the light most favorable to the nonmoving party."  *Kinkade v. Kinkade (In re Kinkade)*, 707 F.3d 546, 548 (5th Cir. 2013) (citing to *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003)); *see also Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009).  The ability to consider material found in the record does not mean that the court must engage in a quest to pursue support for the non-movant.  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  In order for a fact to rise to the level of a genuine issue of material fact, the fact must be one that "could affect the outcome of an action or allow a reasonable fact finder to find in favor of the non-moving party."  *In re Fauser*, 2015 WL 877451, at *1-2 (Bankr. S.D. Tex. Feb. 26, 2015) (citing *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)); *see also Randall D. Wolcott, M.D., P.A. v. Sebelius*, 497 F. Appx. 400, 404 (5th Cir. 2012) (citing *Crowe v. Henry*,

115 F.3d 294, 296 (5th Cir. 1997), which states that "[a] factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party"). In other words, the non-movant bears the burden of showing a genuine dispute through specific evidence, which includes the requirement that the non-movant demonstrate to the court "the manner in which that evidence supports [their] claim." *In re Fauser*, 2015 WL 877451, at *3 (citing to Fed. R. Civ. P. 56(c)(1), *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), and *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004)).   The burden shifts to the non-movant only if the movant should meet its burden of demonstrating the "absence of any genuine issues of material fact," at which time the non-moving party must "establish that there is a genuine issue of material fact in dispute." *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005) (citing to *Celotex*, 477 U.S. at 322). If a party fails to establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" then Rule 56(c) requires that summary judgment be granted against that party.  *Celotex*, 477 U.S. at 322.

Alternatively, the 2010 amendments to the Federal Rules of Civil Procedure codified the long standing belief that courts were permitted to enter summary judgment *sua sponte* against a non-movant when that party was on notice.  *See* Fed. R. Civ. P. 56(f);[9] *see also Celotex*, 477 U.S. at 326 (stating "[o]ur conclusion is bolstered by the fact that district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence"); *Catrett v. Johns-Manville Sales Corp.*, 756 F.2d 181, 189 (D.C. Cir. 1985) (Bork, J., dissenting); *Randall*

---

[9]  Judgment Independent of the Motion. After giving notice and a reasonable time to respond, the court may:
  (1) grant summary judgment for a nonmovant;
  (2) grant the motion on grounds not raised by a party; or
  (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

*D. Wolcott, M.D., P.A.*, 497 F. Appx. at 404 (citing to *Celotex*, 477 U.S. at 326, for the right of district courts to enter summary judgment *sua sponte*); 10A C. Wright, A. Miller, M. Kane, R. Marcus & A. Steinman, Federal Practice & Procedure Civil § 2720 (3d ed.) (granting summary judgment in favor of nonmoving party may be appropriate in certain cases, as "the judge already is engaged in determining whether a genuine issue of material fact exists and the parties have been given an opportunity to present evidence designed either to support or to refute the request for the entry of judgment").

The Fifth Circuit has also acknowledged this ability of a district court to enter summary judgment against a non-movant on multiple occasions and affirmed the ability to do so where "facts dispositive of this issue were presented and argued at length to the district court, and the movant … had a full and fair opportunity to develop the record as to their duty to defend." *Jensen v. Snellings*, 841 F.2d 600, 618 (5th Cir. 1988); *see also In re Caravan Refrigerated Cargo, Inc.*, 864 F.2d 388, 393 (5th Cir. 1989) (stating "[w]e have noted that when one party moves for summary judgment the district court, in an appropriate case, may grant summary judgment against the movant, even though the opposite party has not actually filed a motion for summary judgment") (internal quotations omitted), *abrogated on other grounds by Advance United Expressways, Inc. v. Eastman Kodak Co.*, 864 F.2d 388 (5th Cir. 1992); *British Caledonian Airways Ltd. v. First State Bank of Bedford, Tex.*, 819 F.2d 593, 595 (5th Cir. 1987) (stating "British Caledonian's own motion for summary judgment opened the door to allow the district court to grant summary judgment for Bedford Bank sua sponte, provided adequate warning and the other summary judgment requirements."); *Landry v. G.B.A.*, 762 F.2d 462, 464 (5th Cir. 1985); *S.E.C. v. Microtune, Inc.*, 783 F.Supp.2d 867, 874 (N.D. Tex. 2011) (citing to *In re Caravan Refrigerated Cargo, Inc.*, 864 F.2d at 393, and 10A Wright & Miller, Fed. Prac. &

Proc. § 2720 (3d ed.)).  The Fifth Circuit, on one occasion, noted that all the parties needed to have done, at a minimum, was to have "fully briefed the issue involved in this case" in order for "the court on its own motion [to] consider the plaintiff's opposition as a cross motion for summary judgment on the same issue."  *Evans v. Midland Enters. Inc.*, 754 F. Supp. 91, 95 (5th Cir. 1990) (citing to *In re Caravan Refrigerated Cargo, Inc.*, 864 F.2d at 393).  Thus, if parties had the opportunity to meet in court and there is "no dispute as to as to any fact material to the issue being litigated," then granting summary judgment in favor of a non-movant is appropriate. *Fountain v. Filson*, 336 U.S. 681, 683 (1949).

### B.  Insurance Policy, Related Proceeds, and the Bankruptcy Estate

Under Fifth Circuit precedent, a debtor-owned insurance policy is property of that debtor's bankruptcy estate.  *In re Edgeworth*, 993 F.2d at 55 ("Insurance policies are property of the estate because, regardless of who the insured is, the debtor retains certain contract rights under the policy itself.").  Therefore, the dispute in the instant case is whether proceeds from a debtor-owned insurance policy are property of a bankruptcy estate—an analysis that is entirely dependent, factually, on the type of coverage provided by the policy and beneficiaries of the policy.  The Fifth Circuit has reviewed numerous cases involving the issue of insurance policies and related proceeds.  *See generally In re Babcock & Wilcox Co.*, 69 F. Appx. 659 (5th Cir. 2003); *In re Equinox Oil Co.*, 300 F.3d 614 (5th Cir. 2002); *In re Vitek, Inc.*, 51 F.3d 530 (5th Cir. 1995); *In re Edgeworth*, 993 F.2d at 51–56; *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391 (5th Cir. 1987).  These cases address a wide spectrum of factual scenarios involving a debtor-owned insurance policy and related proceeds and the Court will briefly discuss each in turn.

In the first case, *In re Louisiana World Exposition, Inc.*, the Fifth Circuit was required to

determine whether proceeds from an insurance policy covering director and officer liability were property of the bankruptcy estate. *See generally* 832 F.2d at 1391. The case involved Louisiana World Exposition, Inc. ("***LWE***"), which had organized the 1984 World's Fair in New Orleans, *and* purchased several liability insurance policies for: (i) its officers and directors covering, *inter alia*, legal expenses they might incur in connection with their positions and (ii) indemnification coverage for LWE for reimbursement for such legal expenses or liability related to its officers and directors for a total combined coverage of $20 million. *Id.* Facing financial difficulties, LWE filed for bankruptcy protection under chapter 11 and a Contractor Creditor's Committee ("***Committee***") was formed, which on behalf of LWE and as authorized by the bankruptcy court, filed a complaint, in district court, against various officers and directors of LWE charging them with malfeasance and mismanagement, and named LWE's insurance companies as defendants (the "***Suit***"). *Id.* at 1393–94. About a year after the Suit was filed, the Committee filed a complaint in the bankruptcy court arguing that the liability insurance proceeds were part of LWE's bankruptcy estate and sought an enforcement of the automatic stay and an injunction against further payment by the insurance companies of the officer and director's legal expenses. *Id.* Although the Committee agreed that the officers and directors had a legitimate claim to the liability proceeds for their legal expenses, the Committee feared that if it also became entitled to the liability proceeds by eventually winning its Suit in district court seeking damages from the officers and directors, there may not be enough liability coverage for its damages and the officers' and directors' legal expenses. *Id.* The Committee contended that the $20 million liability proceeds should be divided between the officers and directors and LWE's bankruptcy estate in shares reflecting the ration of their respective claims to the total liability. *Id.* The bankruptcy court dismissed the Committee's complaint without having given written reasons and

the district court affirmed the dismissal on appeal without written reasons.  *Id.*

The Fifth Circuit addressed procedural and jurisdictional concerns for the Committee's appeal, but addressed the merits of the insurance issue rather than following an "empty, formalistic ritual of remanding the case so that the [creditor's committee] may more punctiliously" prosecute its case.  *Id.* at 1394–98.  In addressing the insurance policy and its proceeds, the Fifth Circuit reasoned that the insurance policies were property of the debtor's estate, but that ownership of the policy's proceeds did not always follow policy ownership.  *Id.* at 1398–99 (citing to *United States v. Whiting Pools, Inc.*, 462 U.S. 198 (1983)).  In determining whether liability policy proceeds were an asset of the bankruptcy estate, the Fifth Circuit reviewed numerous cases, both on point and analogous, before reasoning that the dichotomy of proceeds ownership turns on whether whose liability is covered, debtor or related third party conduct.  *Id.* at 1399–1400 (citing to *In re Davis*, 730 F.2d 176, 184 (5th Cir. 1984); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir. 1986); *Tringali v. Hathaway Machinery Co.*, 796 F.2d 553, 560–61 (1st Cir. 1996) (holding that bankrupt's liability insurance proceeds are part of the estate)).  In cases where the liability policy "provided coverage for judgments against or losses of the bankrupt corporation itself … the *estate owns* not only the policies, but also the *proceeds designated to cover* corporate losses *or liability*." *In re Louisiana World Exposition, Inc.*, 832 F.2d at 1399–1400.  That, however, was different than the situation in *Louisiana World* where the liability policy covered expenses of the directors and officers, not the debtor itself.  *Id.* at 1400.  The Fifth Circuit distinguished the application of 11 U.S.C. § 541(a)[10] to the liability policy proceeds by analogizing it to a situation where the policy owner assigned the benefits of a

---

[10] In this section, the Code provides that the bankruptcy estate consists of all types of property listed thereafter regardless of its location and by whom it is held. § 541(a); *see also* § 541(a)(1)–(7).  *But see* § 541(b)(1)–(8) (listing certain types of property not included in the bankruptcy estate).

policy to a third party, thus putting the proceeds beyond the policy owner's reach. *Id.* at 1400–01. Ultimately, the Fifth Circuit concluded that although the policies belong to LWE's bankruptcy estate, the proceeds of those policies did not belong to LWE's bankruptcy estate because they were payable to a third party, e.g. officers and directors, upon whom the liability is derived.[11] *Id.*

In *Edgeworth*, a case that the Settling Creditors have heavily relied upon, Christine Genson, the plaintiffs' mother, died while under the care of Dr. Lewis Edgeworth ("**Dr. Edgeworth**"). 993 F.2d at 53. Dr. Edgeworth filed for protection under chapter 7 of the Bankruptcy code. *Id.* Plaintiffs did not file a proof of claim or otherwise participate in the bankruptcy case. *Id.* However, after Dr. Edgeworth received his discharge, plaintiffs sought and obtained approval from the bankruptcy court to file a medical malpractice claim against Dr. Edgeworth in state court. *Id.*; *see also id.* at 53 n.2. Ultimately, Dr. Edgeworth persuaded the bankruptcy court to reverse itself to enforce the discharge injunction and enjoin the state court lawsuit pursuant to 11 U.SC. § 524(a), which the district court affirmed on appeal. *Id.* at 53. The Fifth Circuit, in this particular case, was called upon to determine whether plaintiffs could pursue their lawsuit against Dr. Edgeworth in order to collect any judgment solely from the proceeds of Edgeworth's malpractice liability policy. *See generally id.*

Ultimately, the Fifth Circuit concluded that the plaintiffs could pursue claims against Dr. Edgeworth's insurer as plaintiffs' claims had been discharged only as to Dr. Edgeworth. *Id.*; *see also* § 524(e) (excluding liability insurers from debtor's discharge). The Fifth Circuit came to

---

[11] "'[T]he estate's legal and equitable interest in property rise no higher than those of the debtor,' and LWE, the debtor, had no ownership interest whatsoever in the proceeds from the liability coverage. With regard to the liability proceeds, the obligation of the insurance companies was only to the directors and officers and they are the named and the only insureds. These proceeds would be paid only if the directors and officers incurred some covered legal expense or liability. LWE's rights were limited to the indemnification proceeds." *In re Louisiana World Exposition, Inc.*, 832 F.2d at 1399 (citing to *In re Ganon,* 26 B.R. 926, 928 (Bankr. M.D. Pa. 1983)).

that conclusion because plaintiffs' claims did not raise a question about whether the policy was sufficient to cover all claims and Dr. Edgeworth would not incur expenses related to the litigation. *Edgeworth*, 993 F.2d at 54–55.

In discussing if insurance policy proceeds are part of the bankruptcy estate, the Fifth Circuit held that "property of the estate" under § 541(a) should be construed broadly and that courts are generally in agreement that an insurance policy will be considered property of the estate because regardless of who the insured is, the debtor retains certain contractual rights under the policy itself, thus any rights the debtor has against the insurer, whether contractual or otherwise, become property of the estate. *Id.* The Fifth Circuit went on to say that:

> [t]he overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim. When a payment by the insurer cannot inure to the debtor's benefit, then that payment should neither enhance nor decrease the bankruptcy estate. In other words, when the debtor has no cognizable claim to the insurance proceeds, those proceeds are not property of the estate."[12]

*Id.*; *see also id.* at 55–56 & n.20–21 (citing to 11 U.S.C. § 362, *First Fidelity Bank v. McAteer*, 985 F.2d 114, 117 (3rd Cir. 1993), and *In re Gagnon*, 26 B.R. 926, 928 (Bankr. N.D. Pa. 1983)).

Accordingly, the Fifth Circuit, in *Edgeworth*, distinguished whether a secondary impact, such as "the policy limit was insufficient to cover … claims or competing claims to proceeds," was alleged or if Dr. Edgeworth could assert a legally cognizable claim upon the proceeds. *Id.* at 55–56 & n.21 (discussing the role of the automatic stay in a mass tort case and the needs of the bankruptcy court to protect the debtor's estate from claims in excess of the coverage). *But see id.* at 55 (discussing how "sufficiency of the liability insurance coverage" may result in a

---

[12] "Examples of insurance policies whose proceeds are property of the estate include casualty, collision, life, and fire insurance policies in which the debtor is a beneficiary. Proceeds of such insurance policies, if made payable to the debtor rather than a third party such as a creditor, are property of the estate and may inure to all bankruptcy creditors. But under the typical liability policy, the debtor will not have a cognizable interest in the proceeds of the policy. Those proceeds will normally be payable only for the benefit of those harmed by the debtor under the terms of the insurance contract." *Edgeworth*, 993 F.2d at 56.

different outcome for a creditor's post-discharge lawsuit because where as in Edgeworth where

there is no question that the insurance proceeds exceed filed claims, a plaintiff's failure to file a

claim in the bankruptcy proceeding should not impair the right to file suit against another party

who may not be liable on the debt).  The Fifth Circuit further stated that:

> Although Dr. Edgeworth's liability policy was part of the Chapter 7 estate, the proceeds of that policy were not. Dr. Edgeworth has asserted no claim at all to the proceeds of his medical malpractice liability policy, and they could not be made available for distribution to the creditors other than victims of medical malpractice and their relatives. Moreover, *no secondary impact has been alleged upon Edgeworth's estate*, which might have occurred if, for instance, the policy limit was insufficient to cover appellants' claims or competing claims to proceeds. *Consequently*, in this case the insurance proceeds were not part of the estate as a matter of law, and section 524 does not bar appellants from pursuing their state court suit against Dr. Edgeworth so they can recover against policy proceeds.

*Id.* at 56 (emphasis added).  Ultimately, as Dr. Edgeworth's policy coverage exceeded all claims,

the Fifth Circuit held that the insurance policy's proceeds were not a part of the bankruptcy

estate because Dr. Edgeworth had asserted no claim to the proceeds, § 524(e)[13] excludes the

liability insurance carrier from the protection of the bankruptcy discharge, and the proceeds were

available only to claimants.   *Id.* (noting, importantly, the consequence of having sufficient

coverage was that the proceeds were excluded); *see also In re Sfuzzi*, 191 B.R. 664 (Bankr. N.D.

Tex. 1996) (holding that the claims against the debtors' policy did not involve a mass tort, would

not exhaust the policy's proceeds, and would not threaten the debtors' estate).

In a subsequent case, upon which Petitioning Creditors heavily rely, the Fifth Circuit

addressed the issue of whether a chapter 7 trustee could properly settle with an insurer when that

settlement provided the entirety of the policy's proceeds to the bankruptcy estate.   *In re Vitek,*

*Inc.*, 51 F.3d at 530.  In *Vitek*, the debtor, Vitek, Inc., was a producer of medical implants that

were the subject of lawsuits in multiple jurisdictions on the basis of allegedly defective

---

[13] "Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."

prostheses manufactured by Vitek, Inc., resulting in Vitek, Inc.'s filing for bankruptcy protection under Chapter 7. *Id.* at 531–32. Vitek, Inc. owned several liability policies naming Vitek, Inc. as an insured and also provided for, *inter alia*, plaintiffs as co-insureds. *Id.* at 532. The dispute between the insureds arose after the chapter 7 trustee negotiated settlements with most of the insurance carriers whereupon the insurers would remit the entirety of their coverage, up to their respective policy limits in full satisfaction of the carriers' obligations, to the estate and in return would be protected by an injunctive order issued by the bankruptcy court from incurring additional liability and defense costs. *Id.* The bankruptcy court found that the plaintiffs had no property interests in the insurance policies and thus approved the settlements over the objections of the named insureds, who had objected on the basis that their rights under the policies were being deprived. *Id.* Therefore, the bankruptcy court held that (1) "the Estate was the sole owner of the Policies *and* the Proceeds, (2) the Settlements were in the best interest of all relevant parties, and (3) the [plaintiffs'] interests were adequately protected by their unsecured claims against the Estate." *Id.* at 532. On appeal, the district court disagreed with the findings of the bankruptcy court and held that that "the bankruptcy court erred when it ruled that the [plaintiffs] had no independent property interests in the [policy proceeds]" and remanded the case with instructions for the bankruptcy court to extend the injunction to cover the other named insureds, namely the plaintiffs. *Id.*

On further appeal, the Fifth Circuit dealt with the central issue of "when one of two or more coinsureds declares bankruptcy and seeks protection under Chapter 7, what part of the proceeds of a liability policy that covers the non-bankrupt coinsureds should enrich the estate of the coinsured debtor?" *Id.* at 533. Analyzing both the bankruptcy and insurance aspects of the case, the Fifth Circuit concluded, as it stated many other courts had, that the insurance policy fell

within §541(a)(1)'s definition of estate property and thus was an asset of the bankruptcy estate. *Id.*  The Fifth Circuit reasoned that "[t]his consensus is understandable: [a] products liability policy . . . is a valuable property of a debtor, particularly if the debtor is confronted with substantial liability claims.  Often, as in this case, liability policies constitute "the most important asset of . . . [the debtor's] estate." *Id.* (citing to *A.H. Robins,* 788 F.2d at 1001).  The Fifth Circuit described its decisions on insurance policy proceeds as a continuity ranging from a debtor's policy that covered liability of directors and officers, where the proceeds were not a part of the debtor's bankruptcy estate, to a debtor's policy that covers its own liability in relation to third parties, where the Fifth Circuit "declared or at least impl[ied] that both the policy and the proceeds of that policy are property of the debtor's bankruptcy estate." *Id.* at 535.  In reviewing the standards of insurance law, as applicable in *Vitek,* the Fifth Circuit concluded that the district court incorrectly grounded its opinion upon the concept that an insurer is prohibited from settling claims in a way that may place its co-insureds at odds with another insured since "an insurance company cannot prefer one of its insureds over another." *Id.* at 535–37.  In conclusion, the Fifth Circuit held that nothing prohibited the settlement between the insurer and the debtor's estate and therefore reversed the order of the district court, affirmed and reinstated the order of the bankruptcy court, which authorized the settlements, reinstated the injunction which was modified to allow Plaintiffs to bring a cause of action, should they so choose, against the insurers for breach of good faith. *Id.* at 537–38.  The Fifth Circuit added two related notes of caution against extending the *Vitek* holding outside of its mass torts context or to chapter 11 proceedings. *Id.* at 533 n.3, [14] 538 n.39.[15]

---

[14] "The issues here considered are more frequently encountered in proceedings in Chapter 11 reorganizations than in Chapter 7 liquidations. Consequently, any analogical crossovers into Chapter 11 jurisprudence is problematical, particularly those Chapter 11 proceedings that implicate mass tort litigation, e.g., asbestos, birth control devices, etc. In the same vein, the precedential—or even merely instructional—value of this opinion to future Chapter 11 cases

*Equinox Oil* provides a different analysis of insurance policy proceeds and their inclusion in the debtor's bankruptcy estate or lack thereof.  *See generally In re Equinox Oil Co.*, 300 F.3d at 614.  Equinox Oil Company, Inc. ("**Equinox Oil Co.**") operated oil and gas leases owned by Alma Energy Corp. ("**Alma**").  *Id.* at 616.  Equinox Oil Co. and Alma, which have common ownership, borrowed over $106 million from Den norske Bank, ASA, on an individual basis and as agent for BNP Paribas and Comercia Bank – Texas (collectively, the "**Bank Group**"), which was secured by mortgages and other security rights in Alma's assets.  *Id.*  In addition to the debts owed to the Bank Group, Equinox Oil Co. had incurred unpaid debts to various service providers while operating the leases.  *Id.*  These creditors filed liens against the property securing the Bank Group mortgages under the Louisiana Oil Well Lien Act ("**LOWLA**").  *Id.*  During September 1998, a blowout occurred at one of the wells causing property damage and an oil spill, and in response to the blowout, Equinox Oil Co. notified its insurer, National Union Fire Insurance Company, and "[n]umerous companies provided services and equipment ("Remediation Creditors") to [Equinox Oil Co.] to stop the blowout and clean up the spill."  *Id.* at 616–17. National Union paid Equinox Oil Co. in excess of $700,000 to resolve a portion of the insurance claim and Equinox Oil Co. paid some but not all of its Remediation Creditors.  *Id.*  Shortly thereafter, Equinox Oil Co. was placed into an involuntary chapter 7 bankruptcy, which Equinox

---

should probably be 'little or none.'"

[15] "In again cautioning our readership against relying on this opinion as precedential or instructive beyond its narrow holding in the context of the particular facts and circumstances of this case, we are constrained to mention several caveats and pose one or two rhetorical questions. We wonder "out loud" about the extent, if any, to which the tools of injunctive relief and settlement (or "compromise") are appropriate—not only in dealing with the interests of co-insureds in policy proceeds, but also in dealing with the rights of third party creditors of the bankruptcy and non-bankrupt debtors to the extent any one or more of such third party creditors may oppose the settlement confected by a "steering committee." The broad latitude afforded bankruptcy courts in fashioning remedies should not be used in a way that tramples on the rights of dissenters among creditors or non-parties to the proceedings. Just as § 105 injunctions in mass tort situations are questionable precedent in guaranty and partnership contexts, we also caution against analogical extension of that which we do today to different situations in bankruptcy, such as guaranties and holders of guaranties or partners (distinct from the partnership) in § 723 situations (who appropriately may be enjoined temporarily but who in most instances may not appropriately be enjoined permanently)."

Oil Co. later converted to chapter 11, where the bankruptcy court determined that the insurance proceeds were not property of the bankruptcy estate but the district court reversed on appeal. *Id.*

An appeal to the Fifth Circuit Court of Appeals ensued in which the Remediation Creditors were seeking to have (1) their liens under LOWLA primed over the Bank Group; and (2) the proceeds from a well-control insurance policy excluded from property of the bankruptcy estate and paid to them for work performed. *Id.* at 614–18. The Fifth Circuit dispensed with the first issue quickly as the Remediation Creditor's liens were not senior to those of the Bank Group. *Id.* at 617. Turning to the second issue of whether the proceeds from Equinox Oil Co.'s well-control insurance policy are property of the bankruptcy estate, the Fifth Circuit, citing to *Louisiana World Exposition* and *Edgeworth*, looked to the nature of the policy and whether an insured debtor could benefit from the policy outside of bankruptcy. *Id.* at 618–19. The policy provided for reimbursements to the insured for blow outs and related fires, thus the payments in or outside of bankruptcy would have inured to the debtor. *Id.* at 619.[16] Accordingly, the Fifth Circuit held that the proceeds of the policy were properly included in the bankruptcy estate and should not be paid directly to the pre-petition creditors involved in the post-blowout clean-up effort. *Id.* at 619–20. *C.f. In re Sfuzzi*, 191 B.R. at 664.

The final case, *In re Babcock & Wilcox Co.*, required the Fifth Circuit to determine whether proceeds of an insurance policy were includable in the debtor's bankruptcy estate when those proceeds were to be payable on behalf of the debtor or the debtor's co-insured. 69 F. Appx. at 659. The matter under review initially arose when the insurer filed an interpleader

---

[16] "The policy names the debtor as the assured. Under the terms of the policy, the underwriter agrees 'to reimburse the Assured' for expenses incurred in relation to well blowouts, including costs to extinguish fires and to regain control of the well. In other words, the policy provides coverage for losses of the bankruptcy corporation itself and provides for payment of those losses to Equinox. Clearly this policy falls within the class of 'estate, casualty, collision, life and fire insurance policies' identified in *Edgeworth* in which the debtor is the beneficiary." *Equinox*, 300 F.3d at 619 (citing *Edgeworth*, 993 F2d at 56, and *Louisiana World*, 832 F2d, at 1399-1400).

action seeking to resolve whether releasing policy proceeds would violate the automatic stay when there were allegedly competing claims from the debtor's bankruptcy estate and a non-debtor, both of which were insured under the policy.  *Id.*  The case was subsequently dismissed by the bankruptcy court for lack of subject matter jurisdiction.  *Id.*  On appeal, the district court affirmed dismissal but on other grounds.  *Id.*  On appeal, the Fifth Circuit approached the matter by looking to its prior decisions in *Equinox Oil* and *Edgeworth*, wherein it stated that:

> [t]he *overriding* question when determining whether [insurance] proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim. When a payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate. In other words, when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate.

*Id.* (citing to *In re Equinox Oil Co.*, 300 F.3d at 618–19, and *In re Edgeworth*, 993 F.3d at 55–56).  The Fifth Circuit found that the language of the insurance policy required it to make payments on behalf of the covered insureds because the language of the policy, "that [the insurer] must pay on behalf of the insured," meant that proceeds of the policy were paid to third parties and not directly to the debtor.  *Id.* (internal quotations omitted). As such, the Fifth Circuit concluded that as the proceeds would not reach the debtor, the policy's proceeds were not property of the debtor's estate and the matter had been properly decided.  *Id.*

### C.  Interpretation of Insurance Policy Provisions Under Texas Law

In order to determine whether the policy proceeds belong to OGA's bankruptcy estate, the Court must look to the provisions of OGA's insurance policy to determine whether OGA can make a legally cognizable claim upon the policy, pursuant to the Fifth Circuit's "overriding question" in these matters.  *In re Equinox Oil Co.*, 300 F.3d at 618–19 (citing to *In re Edgeworth*, 993 F.3d at 55–56).

The Supreme Court of Texas has stated that the interpretation of insurance policies, as

with any other contract, must be done by "read[ing] all parts of each policy together and exercise caution not to isolate particular provisions from the contract as a whole." *Provident Life and Acc. Ins. Co. v. Knott*, 128 S.W. 3d 211, 216 (Tex. 2003) (citing to *State Farm Life Ins. Co. v. Beaston*, 907 S.W. 2d 430, 433 (Tex. 1995), and *Gen. Am. Indem. Co. v. Pepper*, 339 S.W. 2d 660, 661 (Tex. 1960)).  In so doing, "a court must read all parts together, giving meaning to each sentence, clause, and word, to avoid making any portion inoperative." *Bldg. Specialties, Inc. v. Liberty Mut. Fire Ins. Co.*, 712 F. Supp. 2d 628, 635 (S.D. Tex. 2010) (citing *Fiess v. State Farm Lloyds*, 202 S.W. 3d 774, 748 (Tex. 2006)).  The purpose behind this is that "[v]iewing the policy in its entirety furthers our objective to give effect to the written expression of the parties' intent." *Id.* (citing *Tex. Farmers Ins. Co. v. Murphy*, 996 S.W.2d 873, 879 (Tex.1999)).

### D.  Abstention and Remand

For a motion to remand, or alternatively to abstain, there are four different bases from which it may be brought: 28 U.S.C. §§ 1447(c), 1452(b) and 28 U.S.C. § 1334(c)(1), (c)(2).  *In re Treyson Dev., Inc.*, 2016 WL 1604347, at *1 (Bankr. S.D. Tex. Apr. 19, 2016).  Section 1447 astricts courts to remand causes of action when the court determines that it lacks subject matter jurisdiction at any point prior to final judgment.  § 1447(c); *see also In re Allison*, 2006 WL 2620480, at *7 (Bankr. S.D. Tex. Sep. 12, 2006) ("At a minimum, a bankruptcy court has jurisdiction to determine its own jurisdiction.").  A motion for remand pursuant to § 1452 or abstention under § 1334(c)(1) are similar in nature, as both are rooted in equity and courts have discretion to rule.  *J.T. Thorpe Co. v. Am. Motorists*, 2003 U.S. Dist. LEXIS 26016, at *21 (S.D. Tex. June 6, 2003).  Remand under §§ 1452 and 1334(c)(1) also use similar factors for considering whether to remand the removed action.  *Browning v. Navarro*, 743 F.2d 1069, 1076 n.21 (5th Cir. 1984); *WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75

F.Supp.2d 596, 603 n.1 (S.D. Tex. 1999); *see also Ramirez v. Rodriguez*, 413 B.R. 621, 631–33

(Bankr. S.D. Tex. 2009).  A list of non-exclusive factors have been developed for determining

the appropriateness of discretionary abstention under § 1334(c)(1), including:

> (1) the effect or lack thereof on the efficient administration of the estate;
> (2) extent to which state law issues predominate over bankruptcy issues;
> (3) difficult or unsettled nature of applicable law;
> (4) presence of related proceeding commenced in state court or other nonbankruptcy proceeding;
> (5) jurisdictional basis, if any, other than § 1334;
> (6) degree of relatedness or remoteness of proceeding to main bankruptcy case;
> (7) the substance rather than the form of an asserted core proceeding;
> (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
> (9) the burden of the bankruptcy docket;
> (10) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
> (11) the existence of a right to a jury trial;
> (12) the presence in the proceeding of non debtor parties;
> (13) comity; and
> (14) the possibility of prejudice to other parties in the action.

*Ramirez*, 413 B.R. at 631-32 (citing to *J.T. Thorpe Co.*, 2003 U.S. Dist. LEXIS 26016, at

*22-23).

A motion to abstain pursuant to § 1334(c)(2) is significantly different, and courts have no

discretion if the party requesting relief meets the requirements for remand. *J.T. Thorpe*, 2003

U.S. Dist. LEXIS 26016, at *10; *see Ramirez*, 413 B.R. at 626–28; *see also Schuster v. Mims* (*In

re Rupp & Bowman Co.*), 109 F.3d 237, 239 (5th Cir. 1997).  Section 1334(c)(2) provides that:

> [U]pon timely motion of a party in a proceeding based upon a . . . State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

The key difference between a mandatory abstention and a discretionary abstention or equitable remand is a mandatory abstention applies "only to non-core proceedings—that is, proceedings related to a case under title 11, but not arising under title 11, or arising in a case under title 11." *In re Gober v. Terra + Corp.* (*In re Gober*), 100 F.3d 1195, 1206 (5th Cir. 1996) (comparing 28 U.S.C. §§ 157(b)(1) & 1334(c)(2))(internal quotations omitted); *see also J.T. Thorpe Co.*, 2003 U.S. Dist. LEXIS 26016, at *10; *Ramirez*, 413 B.R. at 626–27. *Cf. Stern v. Marshall*, 564 U.S. 462, 498–99 (2011). Thus, a court must abstain from hearing a cause of action if the following factors are met:

> (1) a motion has been timely filed requesting abstention;
> (2) the cause of action is essentially one that is premised on state law;
> (3) the claim is a non-core proceeding, i.e., it is "related to" a case under title 11 but does not arise under or in a case under title 11;
> (4) the proceeding could not otherwise have been commenced in federal court absent federal jurisdiction under § 1334(b);
> (5) an action has been commenced in state court; and
> (6) the action could be adjudicated timely in state court.

*In re Treyson Dev. Inc.*, 2016 WL 1604347, at *21 (citing *Schuster v. Mims* (*In re Rupp & Bowman Co.*), 109 F.3d 237, 239 (5th Cir. 1997*); In re Gober*, 100 F.3d at 1206; *Broyles v. U.S. Gypsum Co.*, 266 B.R. 778, 782–83 (E.D. Tex. 2001); *Lee v. Miller*, 263 B.R. 757, 763 (S.D. Miss. 2001); *Chickaway v. Bank One Dayton, N. A.,* 261 B.R. 646, 649 (S.D. Miss. 2001); *WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75 F. Supp. 2d 596, 605 (S.D. Tex. 1999)).

### E.  Subject Matter Jurisdiction

A motion to dismiss that alleges a lack of subject matter jurisdiction is brought pursuant to Fed. R. Civ. P. 12(b)(1), which the Settling Creditors specifically cite in their Motion to Dismiss. *See generally* [ECF No. 67]. It is axiomatic that federal courts are courts of limited jurisdiction and, as discussed previously, the jurisdiction of bankruptcy courts is sliced even

thinner. *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing to *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)); *C.f. Stern*, 564 U.S. at 462; *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015). If a court lacks statutorily authorized jurisdiction over the particular matter at bar, then the court is without the authority to adjudicate the matter. *Yazdchi v. Cohen Law Firm*, 2017 WL 680685, at *1 (S.D. Tex. Feb. 21, 2017) (citing to *Stockman*, 138 F.3d at 151). In evaluating a Rule 12(b)(1) motion, the defendant will either be facially or factually attacking subject matter jurisdiction and the determination to be made by the court varies depending on the attack. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) (discussing the evidentiary distinctions between a facial and factual attack on subject matter jurisdiction); *see also Daniels v. Church of the Living Word #4 PGT Assoc.*, 2001 WL 1445407, at *1 (N.D. Tex. 2001). When the defendant factually attacks the court's subject matter jurisdiction, the burden of demonstrating jurisdiction is on the plaintiff. *Johnson v. Loyola Univ. New Orleans*, 2017 WL 318628, at *1 (5th Cir. Jan. 20, 2017) (citing to *Budget Prepay, Inc. v. AT&T Corp.*, 605 F.3d 273, 278 (5th Cir. 2010)); *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992); *Paterson*, 644 F.2d at 523 (stating that "[i]f a defendant makes a factual attack upon the court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony, or other evidentiary materials ... [then] plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction"). However, if the defendant makes a facial attack on the court's subject matter jurisdiction, the court "is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true." *Paterson*, 644 F.2d at 523. A court considering a motion to dismiss for lack of subject matter jurisdiction can consider "the complaint alone, the complaint supplemented by the undisputed

facts as evidenced in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286–87 (5th Cir. 2012) (citing to *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001)).   Upon a party failing to demonstrate that "the court lacks the statutory or constitutional power to adjudicate the claim" and, in the case of a factual attack, the court determining there are no facts entitling the plaintiff to relief it seeks, then the claim is properly subject for dismissal.  *Allen v. Infinity Cty. Mut. Ins. Co.*, 2017 WL 661514, *1 (S.D. Tex. Feb. 17, 2017) (Atlas, J.) (citing to *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d at 286 (quotations omitted)); *see also Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir.1996)); *Paterson*, 644 F.2d at 523.

In light of the foregoing, the Court must determine whether the principle of mandatory abstention applies in this matter and if the Court has subject matter jurisdiction.  If the Court need not abstain and possesses subject matter jurisdiction, then the Court must determine whether OGA had a legally recognizable claim upon the policy's proceeds or if the secondary impact exception applies.

## IV. CONCLUSIONS OF LAW

### A.  Jurisdiction & Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11."  Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.  28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).  This is

a core matter as it "concern[s] the administration of the estate" and "affect[s] … the adjustment of the debtor-creditor … relationship." § 157(b)(2)(A), (O); s*ee also In Re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999).[17]

This Court may only hear a case in which venue is proper. 28 U.S.C. §§ 1408, 1409. In its petition, Petitioning Creditors state that OGA has its principal place of business in San Juan, Texas. [ECF No. 1]; *see also* [Bankr. ECF Nos. 1, 33]. Therefore, venue is proper.

## B. Constitutional Authority to Enter A Final Order

This Court has an independent duty to evaluate whether it has the constitutional authority to sign a final order. *Stern*, 564 U.S. at 462. *But see Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938-39 (2015) (holding that parties may consent to jurisdiction on non-core matters).[18] The instant matter does not alter the relationship of any of the parties, but rather merely resolves where they may seek relief—either through the bankruptcy process or settlements, as appropriate, or through litigation against the Insurer. As the Court is not ruling on the merits of the underlying harms suffered by Petitioning Creditors and Settling Creditors, the Court does not run afoul of the restrictions set forth in regard to personal torts and wrongful death claims. *See* § 157(b)(2)(O). Therefore, this Court holds constitutional authority to enter a final order and judgment with respect to the core matter, determination of the extent of property of OGA's bankruptcy estate, at bar. § 157(b)(2)(A)

## C. Abstention and Subject Matter Jurisdiction

As matters that must be resolved before the crux of the dispute may reached, there are two initial analyses to be undertaken. First, the Court must determine whether it should or must

---

[17] "[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."

[18] Trustee along with the Petitioning Creditors have consented to the entry of final orders on all non-core matters by the Court while the Settling Creditors, along with Garcia, and Insurer have not consented to the entry of final orders on all non-core matters by the United States Bankruptcy Court. *See generally* [ECF Nos. 96, 100, 97, 98, 99].

abstain from hearing this matter.  Second, the Court must determine whether it possesses subject matter jurisdiction to hear the dispute.

### 1.  Abstention is Inapplicable

The Settling Creditors filed their Motion for Abstention and seek the Court abstain from hearing the present matter.  [ECF No. 37].  However, the principle of abstention under § 1334 require that the movant meet six factors, else the court is not required to mandatorily abstain from hearing the matter.  First, Settling Creditors filed their Motion for Abstention timely, a mere 18 days after the case was filed and thus satisfy the first factor.  *Compare* [ECF No. 1] *with* [ECF No. 31].  Second, the cause of action in the Petitioning Creditors' and, subsequently, the Trustee's complaint is not premised on state law, but on federal bankruptcy law.  [ECF Nos. 1, 78].  As such, Settling Creditors have failed to satisfy the second factor.  *In re Treyson Dev. Inc.*, 2016 WL 1604347, at *21.  Third, as the cause of action is rooted in federal law, specifically Trustee seeks a declaration, pursuant to 28 U.S.C. § 2201, determining whether certain property of OGA is property of the estate under § 541, the instant matters arise in a case under title 11 or, alternatively, arises under title 11.  [ECF No. 78]; *see also* §§ 157, 1334.  Thus, the Court's jurisdiction is not implicated in § 1334(c)(2)'s standards for abstention.  [ECF No. 78]; *In re Treyson Dev. Inc.*, 2016 WL 1604347, at *21.  Therefore, the Settling Creditors have failed to demonstrate the third and fourth factors.  [ECF Nos. 78]; *In re Treyson Dev. Inc.*, 2016 WL 1604347, at *21.  Finally, the underlying issues presented in this matter do not involve interpretation of contracts and claims of personal injury or wrongful death, the issue that this Court must resolve involves the administration of the bankruptcy estate of OGA that could not be litigated in state court and thus was not commenced nor could have been adjudicated timely in state court.  § 1334(a); *see also* 28 U.S.C. § 157(b)(2)(A).  Therefore, the Settling Creditors have failed to demonstrate the fifth and sixth factors.  *Compare* [ECF No. 31] *with In re Treyson Dev.*

*Inc.*, 2016 WL 1604347, at *21.  Accordingly, the Court finds that Settling Creditors have failed to demonstrate all six factors required for mandatory abstention.  *In re Treyson Dev. Inc.*, 2016 WL 1604347, at *21.  Moreover, given the federal courts' original jurisdiction in matters concerning bankruptcy, it is impossible for the Court to abstain from hearing this matter as it squarely involves OGA's bankruptcy and determination of assets belonging to the estate. § 1334(a); § 157(b)(2).

Alternatively, Settling Creditors seek discretionary abstention under § 1334(c)(1).  [ECF No. 31 at 4–7].  As the Court discussed above, the instant matter involves interpretations of federal law, i.e. whether OGA's Policy and related Proceeds are property of the bankruptcy estate, including administration thereof, and not the underlying state law issues related to the Accident and any harms related thereto.  As such, the Settling Creditors have failed to demonstrate factors 1, 2, 4, 5, 6, 7, 8, 10, 11, 13.  The Court discusses at length below the nature of the dispute and the extent to which the case law in this area is settled, which has not been disturbed in nearly two decades, and thus the third factor has not been demonstrated.  *See infra*. The two factors that Settling Creditors have demonstrated, albeit largely on a conclusory basis, are factors 12 and 14.  [ECF No. 31 at 6].  The final factor is the ninth factor, which the Settling Creditors fail to demonstrate with an unsupported assertion regarding the nature of the Court's docket.  [ECF No. 31 at 5].  Given the Court's statutorily assigned duty of the bankruptcy courts, the foregoing analysis on both mandatory and discretionary abstention, and the circumstances of this case, the Court finds no merit in Settling Creditors' contentions such that it should exercise its discretion to abstain from hearing this matter.

As Settling Creditors have failed to demonstrate all six factors for mandatory abstention and, for the reasons stated above and the discussion below in regards to subject matter

jurisdiction, the Court finds no merit in Settling Creditors' argument for discretionary abstention and finds that the Settling Creditors' Motion for Abstention should be denied.

### 2.   The Court Possesses Subject Matter Jurisdiction Over the Dispute

In their Motion to Dismiss, the Settling Creditors argue that the Court lacks subject matter jurisdiction over the dispute on two bases.  *See generally* [ECF No. 67].  First, the Settling Creditors state that the relevant case law does not support a finding that the Proceeds of OGA's Policy is property of the estate.  *Id.*  Second, that the relevant case law likewise does not establish a secondary impact exception to the general rule that proceeds of an insurance policy are not property of a bankrupt's estate unless the debtor could make a claim against the policy and keep any proceeds of such claim.  *Id.*  The Trustee, in his response, argues that the contrary is supported by case law in the Fifth Circuit.  *See generally* [ECF No. 69].

The burden to demonstrate a lack of subject matter jurisdiction, in the case of a facial attack, rests with the movant.  *Paterson*, 644 F.2d at 523.  Here, Settling Creditors did not attach any relevant exhibits to their Motion to Dismiss.  *See generally* [ECF No. 67 at 3]. [19]  Thus, the Court concludes that the Settling Creditors have made a facial, as opposed to a factual, attack on subject matter jurisdiction being held by the Court due to the lack of relevant evidence attached to the Motion to Dismiss and, as such, will look to the complaint and undisputed facts in the

---

[19] In paragraph 7, Settling Creditors reference exhibits attached to their response to the initial complaint and stated that such exhibits are "incorporated herein by reference."   [ECF No. 67 at ¶ 7].   The first exhibit is the Settling Creditors response to Petitioning Creditor's complaint, [ECF No. 1], and is therefore not relevant evidence to the current complaint, [ECF No. 78], because it does not "make a fact more or less probable."  *Compare* [ECF No. 16-1] *and* Fed. R. Evid. 401(a).  The second exhibit is a demonstrative exhibit summarizing various cases relevant to this matter and extrapolating the holding and rule from each case, as read by the Settling Creditors.  *See generally* [ECF No. 16-2].  While Rule 1006 permits demonstrative exhibits to "summar[ize] … the content of voluminous writings … that cannot be conveniently examined in court," the eight cases included in the summary are all easily examined so the second exhibit is not evidence under Rule 1006.  *Compare* [ECF No. 16-2] *with* Fed. R. Evid. 1006.  The final exhibit is a copy of a state court petition allegedly filed by one of the Petitioning Creditors.   [ECF No. 16-3].  Although that state court petition may demonstrate that the plaintiffs therein are pursuing other legal avenues, it is of no consequence to whether OGA's Policy, including its Proceeds, are property of the estate in this case.  *Compare* [ECF No. 16-3] *with* Fed. R. Evid. 401(a).  Therefore, none of the exhibits referenced by Settling Creditors are relevant to the instant matter.

record to determine whether it possesses subject matter jurisdiction. *Compare id. with Paterson*, 644 F.2d at 523. The complaint, as amended, alleges that the Proceeds are assets of the bankruptcy estate due to the secondary impact exception to the general rule governing insurance policies and their proceeds' inclusion as property of the bankruptcy estate. *See generally* [ECF Nos. 1, 78]. The complaint simply seeks a declaration that the Policy and its Proceeds are property of the bankruptcy estate and sets forth the relevant case law, from the Petitioning Creditors and Trustee, respectively, to support that declaration. *Id.*

The crux of the Settling Creditors argument is that the Fifth Circuit in *Edgeworth* and its progeny deprive this Court of its subject matter jurisdiction. [ECF No. 67]. They are wrong. The Court's subject matter jurisdiction derives from § 157 and § 1334, neither of which Settling Creditors argue is affected by *Edgeworth* and its progeny. *Id. But see* § 157(a), (b)(1), (b)(2)(A); § 1334(a); In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012) (referring all "cases and proceedings arising under Title 11 or arising in or related to a case under Title 11 . . . to the bankruptcy judges of this district," with several exceptions that are irrelevant to the case at bar). *Edgeworth* sets forth a threshold question that must be addressed, which is a determination that must be made in a bankruptcy proceeding—however, the question is not a bar to jurisdiction, as the Settling Creditors argue. *Compare* 993 F.2d at 55–56 *with* [ECF No. 67 at 6–7]. Assuming, *arguendo*, that Settling Creditors are correct, their argument that there is no secondary impact exception in the Fifth Circuit simply is not supported by the subsequent decision in *Babcock & Wilcox*, as noted by the Trustee, as no secondary impact was alleged by the parties in that case, which the district court, in fact, explicitly stated in its opinion. *Compare* [ECF No. 67 at 7–10] *with In re Babcock & Wilcox*, 2001 WL 536305, at *5 (Bankr. E.D. La. 2001) (stating "[f]urthermore, there is no allegation that the insurance coverage is

inadequate, which would implicate B & W's assets.  Indeed, B & W admits that it did not even allege the inadequacy of the insurance policy in its adversary complaint.") *and* [ECF No. 69 at 8].  Moreover, the Fifth Circuit in *Vitek*, contrary to Settling Creditors contentions in their Motion for Summary Judgment, held that the bankruptcy court properly approved a settlement for the full value of the proceeds from a debtor's insurance policies, albeit the settlement's injunction of a lawsuit by the debtor's co-insureds was held as improper, when such policies were exhausted.  *Compare In re Vitek*, 51 F.3d at 537–38 (holding that settlement, except for injunction of a lawsuit by the debtor's co-insureds, was proper) *and id.* at 533 n.3 (cautioning use of the case as precedent, by analogy, in chapter 11 case but not opining about its use as precedence for a chapter 7 case) *and id.* at 538 n.39 (cautioning use of the case as precedence outside of the chapter 7 context when mass torts is present) *with* [ECF No. 67 at 7–10] *and* [ECF No. 85 at 8] (arguing that the precedential value of *Vitek* is limited because the Insurer entered into settlements with the Settling Creditors as opposed to the Trustee, as in *Vitek*).  Therefore, in light of the foregoing, the Court finds that the Settling Creditors have failed to demonstrate that the Court lacks subject matter jurisdiction on the basis of either the Policy and related Proceeds not being property of the estate or the secondary impact exception being unsupported by Fifth Circuit jurisprudence.  As such, the Court finds that the Motion to Dismiss should be denied.

### D.  Are OGA's Insurance Policy and Related Proceeds Property of the Bankruptcy Estate?

In order to answer the key question of whether OGA's Policy and related Proceeds are property of this Debtor's bankruptcy estate, the Court must first determine the following: (1) what coverage is provided by the Insurer for OGA's Policy; (2) can OGA assert a legally cognizable claim against the Proceeds of that Policy, which is the threshold question under *Edgeworth*; and finally (3) what role, if any, does the exhaustion of the Policy's Proceeds play in

determining whether such Proceeds are property of the bankruptcy estate.

### 1.   What Does OGA's Policy Cover?

Given the importance of the insurance policy and its link to the resolution of this matter, the Court must review and determine what coverages are provided by the Policy.   Settling Creditors included a copy of OGA's Policy as an exhibit to their Motion for Summary Judgment. [ECF No. 85-3]; *see also* [ECF No. 77-1].   The Policy provides coverage on the two vehicles that were operated by OGA.   *See generally* [ECF No. 85-3 at 4–8].   That coverage is broken down into several specific subsets:   liability, personal injury protection, uninsured motorist, physical damage comprehensive, and physical damage collision.   *Id.* at 4–6.   Each of these coverages is subsequently explained in greater detail in the Policy.   *See generally* [ECF No. 85-3].   To wit, OGA has two vehicles covered for liability purposes, both are covered up to $5,000,000.00 per accident, under the Policy.   *Id.* at 4, 6–7, 71.   For the purposes of the coverage, the Policy defines "you and your" to be the named insured, OGA.   *Id.* at 18 (quotation marks omitted).   Under the Policy's terms and for the purposes of this case,[20] the vehicles covered are those specifically identified in the Policy.   *Id.* at 18.   For "Business Auto Coverage," the Policy provides that the Insurer "will pay all sums an insured legally must pay as damages because of bodily injury[21] or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto."   *Id.* at 19 (quotation marks omitted); *see also id.* at 27–29 (providing definitions for certain terms used throughout the Policy's Business Auto Coverage section); *id.* at 44–46 (setting forth a limit of $2,500.00 per "insured" for personal injury protection under the Policy).   For the purposes of this case, the Policy defines an "insured"

---

[20] The Policy provides coverage for additional classifications of vehicles, none of which are pertinent to this case. *See* [ECF No. 85-3 at 4, 18] (providing coverage for vehicles under the classification codes of 7, 8, and 9).

[21] The Policy's coverage for bodily injury is subject to certain professional services exclusions.   [ECF No. 85-3 at 37].

as OGA and any individual using a covered vehicle with OGA's permission." *Id.* at 19–20.[22]  In addition to the basic coverage provided in section II(A) of the Policy's Business Auto Coverage, the Policy also provides for certain supplemental payments.  *Id.* at 20; *id.* at 61 (providing supplementary death benefits to "Insureds"); *see also id.* at 28 (defining "Insured").   The "Business Auto Coverage" rider sets forth both comprehensive and collision coverages for physical damage to a covered vehicle, although only collision is relevant under the facts of this case.  *Id.* at 23 (quotation marks omitted).  Under the collision coverage, the Policy covers "*loss to a covered auto or its equipment*" for damages caused by "the covered auto's collision with another object; or *the covered auto's overturn*."  *Id.* (quotation marks omitted and emphasis added).   The maximum coverage for property damage for collision is either $25,000.00 or $75,000.00, depending on the vehicle involved.  *Id.* at 34–36.   The Policy does provide for certain changes due to the covered vehicles being garaged in Texas, but those changes do not affect the relevant portions.  *Id.* at 30–31; *see also id.* at 32–33 (discussing provisions for cancellations and nonrenewal specific to Texas).

In summary, the Court finds that the Policy provides several key coverages:  (1) liability coverage to a maximum of $5,000,000.00; (2) collision coverage on the covered autos for either $25,000.00 or $75,000.00, depending on the covered vehicle; and (3) miscellaneous payments for personal injury and death for "insureds."[23]  *See generally* [ECF No. 85-3].  Therefore, the Court finds that the Policy, in accordance with Fifth Circuit case law, is property of OGA's bankruptcy estate, but must further analyze the facts to determine whether the Proceeds of the

---

[22] The Policy provides coverage for additional classifications of "insureds," including exclusions thereof, than those relevant to this case.  [ECF No. 85-3 at 19–20].

[23] The Policy defines "insureds," for the purposes of the Personal Injury Protection and Supplemental Death Benefit coverages, as "[a]nyone else occupying a covered auto with your permission."  [ECF No. 85-3 at 45]; *id.* at 61 (incorporating the definition of insured as those "covered under auto medical payments insurance and/or personal injury protection insurance").

Policy are property of the estate.

### 2.   The Overriding Question:  Does OGA Have a Legally Cognizable Claim to the Insurance Policy Proceeds?

Having determined that OGA's Policy is property of this bankruptcy estate, the Court must now determine whether OGA has a legally cognizable claim to Proceeds from the Policy's coverages.  *In re Equinox Oil Co.*, 300 F.3d at 618–19; *In re Edgeworth*, 993 F.3d at 55–56.  As the Policy provides coverage for both liability and property damage, the question thus becomes whether OGA can make a legally cognizable claim under the Policy on any type of coverage *or* under the Policy as a whole.  The Supreme Court of Texas has directed courts to not interpret the provisions of a policy separately, but rather read "all parts of each policy together and exercise caution not to isolate particular provisions from the contract as a whole."  *Knott*, 128 S.W. 3d at 216.  This approach has been previously followed by another court in this district.  *Liberty Mut. Fire Ins. Co.*, 712 F. Supp. 2d at 635.  Therefore, this Court cannot find a reason to deviate from that requirement and must interpret the Policy as a whole. The Policy not only clearly provides proceeds to OGA under the collision coverage, but according to the representations made by OGA's attorney, Mr. Shurn, OGA has already made a claim against the Policy for damage done to one of the covered vehicles and received $20,000.00 in proceeds from the Insurer for that claim.  [ECF No. 32 at 6]; *see also* [Bankr. ECF No. 36] (noting the $20,000.00 payment and ordering that it was not affected by the preliminary injunction).  However, OGA's claim for property damage, as covered under the Policy, does not address whether OGA can make a legally cognizable claim under Texas law against the $5,000,000.00 in liability coverage under the Policy outside the context of bankruptcy.  The main thrust of Trustee's argument, along with the case law cited, focuses on secondary impact and exhaustion of the Policy's proceeds.  [ECF No. 87 at 9–13].  While the Trustee does address *Louisiana World*'s discussion of debtor-owned

liability policies being property of the estate, as noted in *Vitek*, he does not demonstrate that OGA could actually make a legally cognizable claim against the Policy, as to the liability coverage, outside of bankruptcy, which is the initial consideration requirement of *Edgeworth*. *Compare id. with Edgeworth*, 993 F.2d at 55–56. Thus, the Court finds Trustee has not shown that OGA can make a legally cognizable claim against the Policy's liability coverage to satisfy the *Edgeworth* inquiry. *See generally* [ECF No. 78, 87].

Accordingly, the Court finds that OGA can and has made a legally cognizable claim against the Policy Proceeds insofar as the property damage coverage is concerned and has "a right to receive and keep those proceeds," but it has not been demonstrated by the Trustee that OGA has a legally cognizable claim against the Policy Proceeds insofar as liability is concerned under Texas law. *See, e.g.*, *In re Babcock & Wilcox Co.*, 69 F. Appx. at 659. Thus, the Court must determine whether the secondary impact exception to the general proceeds rule is (1) supported by Fifth Circuit jurisprudence and (2), if so, applicable in the instant case.

### 3. Exhaustion of Insurance and the Bankruptcy Estate

In this matter, the Settling Creditors, including Garcia who has adopted Settling Creditors' pleadings, have argued that it is not the policy of the Fifth Circuit that proceeds of a liability insurance policy are property of the bankruptcy estate. *See generally* [ECF Nos. 17, 20, 58, 67, 68, 71, 85, 86, 93, 94]. Meanwhile, the Trustee and Petitioning Creditors maintain that treating proceeds of a liability insurance policy as property of the bankruptcy estate is consistent with Fifth Circuit precedent and the twin pillars of bankruptcy's notion of fairness between creditors and debtors. [ECF Nos. 1, 2, 87]. The Fifth Circuit in *Edgeworth* stated that the "overriding question" was whether a debtor had a legally cognizable claim to the proceeds of the insurance policy. *In re Edgeworth*, 993 F.3d at 55–56; *see also In re Burr Wolff, LP*, 2007 WL 2964835, at *3. The word "overriding," as defined in the Oxford English Dictionary, means

"taking precedence over all other subjects, considerations, etc." *Overriding*, Oxford English Dictionary (2017), *available at* http://www.oed.com/view/Entry/235375 (last visited June 14, 2017). By using the word "overriding," in lieu of a more finite term, the Fifth Circuit's standard indicates that it is merely a threshold consideration and further analysis may be necessary. *See, e.g.*, *In re Equinox Oil Co.*, 300 F.3d at 618 (noting that the *Edgeworth* question is only "central" to the analysis, not the end of it). A legally cognizable claim is one where the party may not only receive proceeds from an insurance policy, but keep them. *In re Edgeworth*, 993 F.3d at 55–56. The Court has already concluded that the Trustee has failed to demonstrate that OGA has a legally cognizable claim against the Policy's liability coverage as his arguments on this point are, in effect, grounded in the exhaustion of policy proceeds, i.e. secondary impact, despite the contention to the contrary. *See* [ECF No. 87 at 9–13]. Thus, the Court must determine whether the secondary impact exception is applicable.

As discussed above, the secondary impact exception arises when the proceeds of a debtor-owned insurance policy "fail to satisfy all claims." *In re Burr Wolff, LP*, 2007 WL 2964835, at *2; *see also In re Vitek*, 51 F.3d at 534 n.17 (noting the distinction that arose in *Louisiana World* and "is still in ferment"). In *Burr Wolff*, a creditor, Marlin Leasing Corp., sought relief from the stay and a declaration that proceeds from an insurance policy owned by the debtor, Burr Wolff, LP, were property of the bankruptcy estate. *Id.* at *1. The errors and omissions insurance policy provided coverage for the debtor once it "became legally obligated to pay" in an amount in excess of the deductible. *Id.* The policy defined the obligation to pay as when "the claim [was] reduced to a monetary judgment, award or settlement." *Id.* Subsequently, the debtor filed a claim against the policy, which was denied and a state court lawsuit ensued. *Id.* Later that same year, the debtor filed for chapter 7 bankruptcy and Marlin

Leasing Corp., filed a proof of claim for $402,069.  *Id.*  Marlin Leasing Corp. sought relief from the stay, but the bankruptcy court denied the motion, which was appealed.  On appeal, Judge Lake determined that the proceeds issue was not ripe for consideration because the state court litigation was still ongoing and there was not a determination as to the amount of the proceeds needed to satisfy a forthcoming judgment.  *Id.* at *3.  However, before dismissing the case, Judge Lake discussed the standards under Fifth Circuit jurisprudence for the inclusion of policy proceeds in the bankruptcy estate ultimately distilling the diverse array of cases into a two-pronged approach: (1) the debtor possesses a legally cognizable claim to policy proceeds, *or* (2) the proceeds of the policy are inadequate to cover all claims.  *Id.* at *2 (citing to *Edgeworth*, 993 F.2d at 55–56); *c.f. In re Sfuzzi*, 191 B.R. at 666–68 (reviewing Fifth Circuit case law before determining that the sufficiency of the policy to cover all claims resulted in the proceeds being excluded from the bankruptcy estate).

The Court has already found that Trustee has failed to demonstrate that OGA can make a legally cognizable claim against the liability insurance coverage of the Policy, thus the analysis turns to the secondary consideration—exhaustion of proceeds.  Here, it is uncontroverted that the Policy Proceeds are clearly inadequate, unlike the facts of *Burr Wolff*, to cover the claims asserted against OGA irrespective of any state court ongoing litigation because the Insurer asseverates it has entered into sufficient settlements to exhaust the Policy's Proceeds.  *Compare* [ECF No. 85-3] *with* [ECF No. 87-6] *and In re Burr Wolff, LP*, 2007 WL 2964835, at *3 (distinguishing the instant case from cases were the debtor's liability was known).  To wit, Insurer has represented that the Policy's coverage limit of $5,000,000.00 has been reached and not all claims by injured parties, in particular the Petitioning Creditors, were covered.  [ECF No. 77 at 4–9]; *see also* [ECF No. 76].  Similar to the policies described in *Louisiana World*, the

Policy states that it will pay all sums that an insured must legally pay.  *Compare* [ECF No. 85-3 at 19] *with Louisiana World*, 832 F.2d at 1399–1400 (describing policies where coverage provided for "judgments against or losses of the [debtor]"); *see also In re Vitek*, 51 F.3d at 535 (stating that the policy of the Fifth Circuit is that debtor owned insurance policies that cover their own liability in relation to third parties is property of the bankruptcy estate, as are the policy's proceeds); *c.f. In re Edgeworth*, 993 F.2d at 56.

Based on the foregoing, it is clear that the instant case presents, undisputedly, an exhaustion of the Policy's $5,000,000.00 in liability coverage.  The Court's review of case law demonstrates that it is in fact the policy of the Fifth Circuit, pending further fermenting, that proceeds of a debtor's insurance policy are includable in the bankruptcy estate when the debtor can make a legally cognizable claim *or* the sum of all claims against the policy for the debtor's liability exceed the coverage provided.  *In re Vitek*, 51 F.3d at 535 (stating that "when a debtor corporation owns an insurance policy that covers its own liability *vis-a-vis* third parties, we—like almost all other courts that have considered the issue—declare or at least imply that both the policy *and the proceeds* of that policy are property of the debtor's bankruptcy estate"); *In re Louisiana World*, 832 F.2d at 1399–1400; *see, e.g.*, *In re Edgeworth*, 993 F.2d at 55–56.  *But see* [ECF No. 85 at 13, ¶¶ 37–39].  Accordingly, the Court finds that the Proceeds of the Policy are properly includable as an asset of OGA's bankruptcy estate and shall be included.  *In re Vitek*, 51 F.3d 535; *In re Louisiana World*, 832 F.2d at 1399–1400; *see, e.g.*, *In re Edgeworth*, 993 F.3d at 55–56.

### 4.   Considerations of *Law v. Siegel* and Secondary Impact vs. *Soriano*

In their Motion for Summary Judgment, the Settling Creditors argue that the holding of *Law v. Siegel* precludes the use of § 105 to find that insurance policy proceeds are includable in the bankruptcy estate.  [ECF No. 85 at 14, ¶ 41].  In his Cross Motion for Summary Judgment,

Trustee argues that a decision by the Court declaring the Policy's Proceeds as property of the bankruptcy estate would not offend Texas law.  *See generally* [ECF No. 87 at 17–23].

For the purposes of the instant case, *Law v. Siegel* stands for the proposition that a bankruptcy court cannot exceed the authority provided in § 105(a) by issuing an order to "carry out" the provisions of title 11 "by taking action prohibited elsewhere in the Code."  134 S. Ct. 1188, 1190 (2014).  Settling Creditors argue that the Court would be creating a property right to the Policy's proceeds where none existed before and, as such, would be in violation of *Law v. Siegel*.  *Compare* [ECF No. 85 at 14, ¶ 41] *with* 134 S. Ct. at 1190.  A determination that the Proceeds are includable as property of the estate would not create a new property interest that is in contravention to the provisions of the Code.[24]  As such, § 541 is broadly construed and the Fifth Circuit in various cases has stated that proceeds in a case, such as the one before this Court, are property of the estate, thus a finding as such cannot be otherwise prohibited by *Law v. Siegel*. *See* [ECF No. 85 at 14]; *see also In re Vitek*, 51 F.3d at 535 (citing *Louisiana World*, 832 F.2d at 1399–1400).

Settling Creditors further argue that the secondary impact exception could be a collateral attack against Texas law, specifically *Texas Farmers Ins. v. Soriano*, 881 S.W. 2d 312, 315 (Tex. 1994).  *See generally* [ECF No. 85 at 15–19].  Settling Creditors support this argument by citing to a string of Fifth Circuit cases which assert that property of the bankruptcy, should it include the Policy's Proceeds, would "arrive burdened by the various rights, obligations, and limitations…" attached prior to the filing of the bankruptcy.  *Id.  But see* n.24.  Settling Creditors

---

[24] In fact, Settling Creditors argument ignores the provisions of § 541(a)(3), which includes as property of the estate "[a]ny interest in property that the trustee recovers under section … 550."  [ECF No. 85 at 14].  Should the Trustee seek to exercise his avoidance powers, then there is the potential for property recovered, if any, to enter the bankruptcy estate as property of the estate under § 541(a)(3).  The Court reaches no conclusions as to the merits, or lack thereof, of an avoidance action by the Trustee in the instant case but rather uses this point to illustrate a potential pathway to incorporation of the Policy's proceeds into the bankruptcy estate.

also assert that their settlements were entered into pre-petition and under the requirements of Texas' Rule 11. [ECF No. 85 at 17–18] (citing to Insurer's initial disclosures that state it had entered in to settlements pre-petition). *But see* [ECF No. 87 at ¶¶ 7, 37–38]; [ECF No. 87-2 at 6–7] (listing the parties that Insurer entered into settlements with, but admitting that none were filed with a related court). Settling Creditors support this content by citing to dicta in *Landry*. [ECF No. 85 at 18, ¶ 51] (citing to *Landry v. Exxon Pipeline Co., et al.*, 260 B.R. 769, 787 n.62[25] (Bankr. M.D. La. 2001)). *But see Butner*, 440 U.S. at 55 (stating "Property interests are created and defined by state law. *Unless some federal interest requires a different result*, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.") (emphasis added). The Court fails to see how a declaration that the Policy's Proceeds are property of the OGA's bankruptcy estate would offend Texas law, especially, if the Settling Creditors are correct, that such Proceeds would enter the bankruptcy estate fully encumbered. *Id. But see* n.24. It is clear, however, that a determination by the Court on potential encumbrance of Policy Proceeds is a matter for another day. Today, the Court does not find Settling Creditors' argument to be persuasive.

Therefore, the Court finds the Settling Creditors' arguments as to *Law v. Siegel* and the effect of the secondary impact exception are both without merit.

### E. Summary Judgment

In a motion for summary judgment, the facts are construed in favor of the non-movant. *See generally* Fed. R. Civ. P. 56. However, the instant case presents cross-motions for summary judgment which nullifies that requirement; instead, the facts must be construed in the favor of

---

[25] Footnote 62 states, in relevant cited portion: "[p]roperty of the estate comes into the estate subject to all restrictions applicable to that property under state law, unless the restriction is undone by the Bankruptcy Code. *See, Board of Trade v. Johnson*, 264 U.S. 1 (1924); *see also, Butner v. United States*, 440 U.S. 48, 54–55 (1979). Thus, the insurance proceeds, *if* they were considered property of the estate, necessarily would be distributed only to those to whom the state insurance law, or the policies themselves, gave a right to distribution." (emphasis in the original).

both parties. *See In re Kinkade*, 707 F.3d at 548. Thus, the analysis turns solely on which party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

The Court's analysis as to the definitive issue of property of the estate demonstrates that the Settling Creditors have failed to meet their burden of showing that they are entitled to judgment as a matter of law as, based on the Court's interpretation and reading of the relevant case law, its finding that the secondary impact exception is indeed the policy of the Fifth Circuit, and that the action sought is not precluded by *Law v. Siegel* nor, in and of itself, offensive to Texas law. *See supra*; *see also In re Vitek*, 51 F.3d at 535; *In re Louisiana World*, 832 F.2d at 1399–1400; *see, e.g.*, *In re Edgeworth*, 993 F.3d at 55–56. Although Trustee failed to demonstrate that he is entitled to judgment as a matter of law on the first prong of the *Edgeworth* test, Trustee did successfully demonstrate that the secondary impact exception is the policy of the Fifth Circuit and it is undisputed that the Policy's Proceeds are insufficient to satisfy all claims held by the Settling Creditors and the Petitioning Creditors. [ECF No. 77 at 4–9]; *see also* [ECF No. 76]. Therefore, the Court finds that Trustee is entitled to judgment as a matter of law and, as a result, the Cross Motion for Summary Judgment should be granted.

## V. CONCLUSION

The Court was presented with six matters, each of which attempts to resolve the instant case. *See generally* [ECF Nos. 31, 58, 67, 85, 86, 87]; *see also* [ECF No. 78]. The Court reviewed, at length, various aspects of the instant matters and the jurisdictional boundaries related thereto. *See supra*. Ultimately, the Court found that the Settling Creditors' Motion for Abstention, [ECF No. 31], should be denied because the basic tenets of federal jurisdiction, as it relates to the bankruptcy system, is solely a matter for federal courts and the determination of assets of a debtor is statutorily, and by general order, entrusted to the bankruptcy court. The

Court deemed the "Motion of Settled Claimants to Dismiss Complaint for Lack of Subject Matter Jurisdiction," [ECF No. 58], as having been amended by the Motion to Dismiss, [ECF No. 67], and therefore the Court finds it should be denied as moot. The Court next addressed the Settling Creditors' Motion to Dismiss, [ECF No. 67], that sought to dismiss this matter for a lack of subject matter jurisdiction.  For similar reasons as with the Motion for Abstention, the Court found that the Settling Creditors failed to demonstrate that the Court lacks subject matter jurisdiction to determine whether the Policy and related Proceeds are includable in OGA's bankruptcy estate and, as such, the Motion to Dismiss, [ECF No. 67], should be denied.  Finally, the Court reviewed the cross-motions for summary judgment, [ECF Nos. 85, 86, 87], filed by the Settling Creditors, Trustee, and Garcia, by adoption.

The facts in this case are undisputed, so the issue solely turned on which party was entitled to judgment as a matter of law, pursuant to Fed. R. Civ. P. 56, as incorporated into this proceeding by Fed. R. Bankr. P. 7056.  The relevant case law on this issue is on a continuum and no Fifth Circuit decision has exactly the same facts.  However, in reconciling the differences between these cases, the Court distills that the policy of the Fifth Circuit is that debtor-owned liability policies, such as the Policy here, are includable as property of the estate when the proceeds of such policy are insufficient to satisfy the claims against the policy.  *See supra*; *see also In re Vitek*, 51 F.3d at 535; *In re Louisiana World*, 832 F.2d at 1399–1400; *see, e.g.*, *In re Edgeworth*, 993 F.3d at 55–56. However, applying that case law to the instant matter, the Court was unable to determine that OGA had a legally cognizable claim against the Policy's liability coverage but did find that, as the Policy Proceeds would be exhausted, the secondary impact exception would apply in the instant case resulting in the Proceeds being property of OGA's bankruptcy estate.  *See supra*; *see also In re Vitek*, 51 F.3d at 535; *In re Louisiana World*, 832

F.2d at 1399–1400; *see, e.g.*, *In re Edgeworth*, 993 F.3d at 55–56.  As such, the Court found that the Trustee had ultimately met the burden of demonstrating that he was entitled to judgment as a matter of law while the Settling Creditors failed to do so.  Therefore, the Court finds that the Trustee's Cross Motion for Summary Judgment, [ECF No. 87], should be granted and the Settling Creditors' Motion for Summary Judgment, [ECF No. 85], should be denied.  As the Settling Creditors' Motion for Summary Judgment has been denied, Garcia's Notice, [ECF No. 86], which it incorporates by reference, is likewise denied.

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 06/23/2017.

Eduardo V. Rodriguez
United States Bankruptcy Judge

# EXHIBIT "B"



**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

ENTERED
06/23/2017

| | | |
|---|---|---|
| IN RE: | § | |
| **OGA CHARTERS, LLC** | § | **CASE NO: 16-70297** |
|     **Debtor** | § | |
| | § | **CHAPTER  7** |
| | § | |
| **MICHAEL B SCHMIDT, TRUSTEE** | § | |
|     **Plaintiff** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 16-7016** |
| | § | |
| **MARTA  VILLARREAL,** *et al* | § | |
|     **Defendants** | § | **JUDGE EDUARDO V. RODRIGUEZ** |

### ORDER
**[*Resolving ECF Nos. 31, 58, 67, 85, 86, 87*]**

Pending before this Court are six matters: "Intervenors' Motion For Abstention Pursuant to 28 U.S.C. §1334(c)(1) or (c)(2)," [ECF No. 31] ("***Motion for Abstention***"); "Motion of Settled Claimants to Dismiss Complaint for Lack of Subject Matter Jurisdiction," [ECF No. 58]; "Motion of Settled Claimants[1] to Dismiss Chapter 7 Trustee's Amended Complaint for Lack of Subject Matter Jurisdiction," [ECF No. 67] ("***Motion to Dismiss***"); "Motion of Settled Claimants for Summary Judgment," [ECF No. 85] ("***Motion for Summary Judgment***"); "Beatrice Garcia's Notice of Adoption by Reference of Motion of Settled Claimants for Summary Judgment," [ECF No. 86] (the "***Notice***"), and "Chapter 7 Trustee's and Petitioning Creditors' Joint Response to Movant-Creditors Motion for Summary Judgment (Adv. Doc. #85) and Beatrice Garcia's Notice of Adoption by Reference [Adv. Doc. #86] and Joint Cross-Motion for Summary Judgment," [ECF No. 87] (the "***Cross Motion for Summary Judgment***").  For the reasons discussed in the accompanying Memorandum Opinion, the Court finds that Settling Creditors' Motion for

---

[1] The Court refers to the "Settled Claimants" as the "Settling Creditors" in this Order and the accompanying Memorandum Opinion.

Abstention, [ECF No. 31], should be denied as to both mandatory and discretionary abstention, the "Motion of Settled Claimants to Dismiss Complaint for Lack of Subject Matter Jurisdiction," [ECF No. 58], should be denied as moot as having been amended, Settling Creditors' Motion to Dismiss, [ECF No. 67], should be denied, Settling Creditors' Motion for Summary Judgment, [ECF No. 85], and the associated Notice filed by Garcia, [ECF No. 86], should both be denied, and Trustee and Petitioning Creditors' Cross Motion for Summary Judgment, [ECF No. 87], should be granted and Debtor's insurance policy and related proceeds declared property of Debtor's bankruptcy estate.  It is therefore:

**ORDERED** that:

1. "Intervenors' Motion For Abstention Pursuant to 28 U.S.C. §1334(c)(1) or (c)(2)," [ECF No. 31], is hereby **DENIED**;

2. "Motion of Settled Claimants to Dismiss Complaint for Lack of Subject Matter Jurisdiction," [ECF No. 58], is **DENIED** as **MOOT** as having been amended by [ECF No. 67];

3. "Motion of Settled Claimants to Dismiss Chapter 7 Trustee's Amended Complaint for Lack of Subject Matter Jurisdiction," [ECF No. 67], is hereby **DENIED**;

4. "Motion of Settled Claimants for Summary Judgment," [ECF No. 85], is hereby **DENIED**;

5. "Beatrice Garcia's Notice of Adoption by Reference of Motion of Settled Claimants for Summary Judgment," [ECF No. 86], is hereby **DENIED**;

6. "Chapter 7 Trustee's and Petitioning Creditors' Joint Response to Movant-Creditors Motion for Summary Judgment (Adv. Doc. #85) and Beatrice Garcia's Notice of Adoption by Reference [Adv. Doc. #86] and Joint Cross-Motion for Summary

Judgment," [ECF No. 87], is hereby **GRANTED** and the insurance policy, policy no. AU201600009025, owned by Debtor and issued by New York Marine and General Insurance Company, and related proceeds, are declared to be property of Debtor's bankruptcy estate; and

7. All relief previously requested that is not specifically granted herein is expressly **DENIED**.


SIGNED 06/23/2017.

Eduardo V. Rodriguez
United States Bankruptcy Judge